## Haystack Property Owners Assoc., Inc. v. Town of Wilmington

[556 A.2d 110]

No. 86-094

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed January 27, 1989

*Craig R. Wenk*, Wilmington, for Plaintiff-Appellee.

*Robin Stern* of *Gale, Gale, Barile & Corum*, Brattleboro, for Defendant-Appellant.

**Gibson, J.** The Town of Wilmington appeals from a decision of the State Board of Appraisers (Board) reducing the listed values of eight properties in the Haystack Mountain development. We reverse.

The Town raises three issues on appeal: (1) the Board did not make adequate findings to support its decision; (2) the Town met its burden of proof supporting the listed values assigned to the properties; and (3) the Board erred by not visiting the property.

The eight properties at issue each consist of about .25 acres of raw land and are part of the development project at Haystack Mountain Ski Area. The original developer of the project went bankrupt in the mid 1970s, and a new developer took over in 1984. The new developer has indicated that development will focus on certain specific areas and that the eight subject properties are not part of the new development scheme.

The warranty deeds from the original developer to purchasers of lots in the development, including the owners of the eight subject parcels, contain a restrictive covenant prohibiting the installation of water or septic systems unless installed by the developer. The property owners contend that they own properties which they themselves cannot develop because of the restrictive covenant and which the new developer is unwilling to develop. They claim the fair market value of each of the properties to be $850. The Town introduced evidence indicating that a schedule had been developed and applied to all land in the town, with a base value of $9,117 assigned to all .25-acre parcels. Grading adjustments were then applied, with a grade adjustment of .64 applied to seven of the subject parcels and a grade adjustment of .73 applied to the eighth. This resulted in appraisals of $5,800 for seven of the parcels and $7,900 for the eighth parcel. The Board found the fair market value of seven of the parcels to be $2,215 and the eighth parcel to be $5,500.

In reaching its decision, the Board applied a grade adjustment of .243 to each of the seven parcels and an adjustment figure of .603 to the eighth. The findings of the State Board of Appraisers fail to explain, however, how it arrived at the grade adjustment factors it assigned to the subject properties in determining the fair market values of those properties. See *Corrette* v. *Town of St. Johnsbury,* 140 Vt. 315, 316, 437 A.2d 1112, 1113 (1981) (Board has duty to make clear statement so that parties and this Court will know what was decided and how the decision was reached).

Further, there is nothing in the record to indicate how the deficiencies of the various properties (e.g., inability to install separate septic systems, water supply systems, and roads) could be translated into the numerical grade adjustment factors that were used by the Board in determining fair market value. Although the Board found the record confirms that the property owners presented sufficient evidence to overcome the presumption of validity of the Town's appraisals, see *Rutland Country Club, Inc.* v. *City of Rutland,* 140 Vt. 142, 144-45, 436 A.2d 730, 732 (1981), neither the Town nor the property owners introduced evidence as to the grade adjustment factors ultimately applied by the Board in determining fair market value. Thus, since there was no evidentiary foundation for the decision, it must be reversed. *Vermont Wild Land Foundation* v. *Town of Pittsford,* 146 Vt. 589, 590, 508 A.2d 706, 707 (1986).

As part of its argument, the Town also pointed to the fact that the findings of the Board make no mention of comparable properties. In reviewing the record, however, we find that the parties presented no significant evidence of comparables, and no evidence about the average equalization ratio for the Town. As a result, the properties could only have been placed in the town grand list at 100% of fair market value, a circumstance about which the Town can have no complaint, since a court may not list a taxpayer's property higher than fair market value, even if comparable properties are listed above fair market value. *Brown* v. *Town of Windsor,* 139 Vt. 129, 131, 422 A.2d 1268, 1269 (1980); *Ames* v. *Town of Danby,* 136 Vt. 78, 80, 385 A.2d 1075, 1077-78 (1978). Thus, the Town suffered no prejudice from the omitted discussion of comparables. If, as may have been the case herein, no comparables exist, the town-wide ratio should then ordinarily be applied. See *Kachadorian* v. *Town of Woodstock,* 144 Vt. 348, 351, 477 A.2d 965, 967 (1984) (a unique property will be listed at the common ratio for all properties in the jurisdiction).

In light of the determination herein, we find it unnecessary to discuss the remaining issue.

*Reversed and remanded.*