## Woolen Mill Associates v. City of Winooski

[648 A.2d 860]

No. 93-190

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed August 26, 1994

*Philip H. Zalinger, Jr.,* and *Donna Russo-Savage* of *Paterson & Walke, P.C.,* Montpelier, for Plaintiff-Appellee.

*William M. O'Brien,* Winooski, and *Karel Brown Ryan,* Essex Junction, for Defendant-Appellant.

**Dooley, J.** The City of Winooski appeals a decision of the Board of Tax Appraisers (the Board) reducing the assessed value of taxpayer's property from $5,200,000 to $4,750,374. We affirm.

The property consists of four interconnected brick masonry structures, once used as a woolen mill, with a total floor area of 247,600 square feet situated on a 6.1-acre parcel of land in downtown Winooski, called collectively the Woolen Mill. Taxpayer has renovated the structures into 163 residential rental units and about 16,000 square feet of commercial rental property.

The City assessed the property for the 1991 grand list at $5,200,000, based on a report of its appraiser. The City's expert

estimated the fair market value of the Woolen Mill using a combination of two recognized approaches to valuation, comparable sales and income capitalization. Using the comparable sales approach, the appraiser relied upon the sale of a property of similar design located in Manchester, N.H. and, after extensive adjustments, arrived at a value for the subject property of $31,170 per unit or $5,080,710 for the 163 units combined.

The City's appraiser also calculated the value via income capitalization, using taxpayer's income and expense figures for calendar years 1988, 1989, and 1990, and deriving a capitalization rate from the sale values of six apartment properties. Two parts of the calculation are relevant to this appeal. In determining gross income, the City's appraiser used a vacancy rate of 3% because it exceeded the actual historic vacancy rate. In determining operating expenses, the appraiser reduced historic administrative expenses to reflect more accurately typical management, legal and accounting expenses. Through income capitalization, the appraiser reached a fair market value of $5,240,000. He then reconciled the valuations produced by the two methods to reach a fair market value of $5,200,000.

On appeal to the Board, taxpayer argued that income capitalization was the best method of determining fair market value, but contested four aspects of the appraiser's calculations in using this method. Specifically, taxpayer argued for a vacancy rate of 5%, rather than 3%. The Board agreed, finding that the evidence for the City's lower rate was "not conclusive" and that the appraiser had used a 5% vacancy rate in computations with respect to the Manchester, N.H. property. Further, taxpayer contested the appraiser's reduction of administrative expenses to determine net income from which to capitalize. The Board agreed to an increase in administrative expenses. Once the adjustments were made in the appraiser's calculation, the fair market value derived by income capitalization was reduced to $4,750,374. The Board adopted this value, and the City appealed.[1]

The City argues first that taxpayer failed to rebut the presumption of validity in favor of the City's appraisal, see *Rutland Country Club, Inc. v. City of Rutland*, 140 Vt. 142, 144, 436 A.2d 730, 731 (1981), because taxpayer did not introduce evidence showing that the appraisal exceeded fair market value. See *Elliott v. Town of Barnard*,

---

[1] Two other contests were resolved in favor of the City and are not part of this appeal. Taxpayer attempted to cross-appeal on these points, but we dismissed the cross-appeal as untimely filed.

153 Vt. 306, 310, 571 A.2d 653, 656 (1989). We point out, as we have often in the past, that this is a "bursting bubble" presumption. Any admissible evidence can rebut the presumption, whatever we may ultimately think of the evidence's weight. See *City of Barre v. Town of Orange*, 152 Vt. 442, 444, 566 A.2d 951, 952 (1989). The question is: "'Does the fact offered in proof afford a basis for a rational inference of the fact to be proved?'" *Rutland Country Club, Inc.*, 140 Vt. at 146, 436 A.2d at 732 (quoting *Tyrrell v. Prudential Ins. Co. of America*, 109 Vt. 6, 21, 192 A. 184, 191 (1937)).

In this case, taxpayer went forward with two expert witnesses who supported the income capitalization method and criticized the limitation imposed by the City's appraiser on administrative expenses. Taxpayer's lawyer conducted a cross-examination of the appraiser to show inconsistencies in the treatment of vacancy rates to provide a basis for taxpayer's argument that a higher vacancy rate was appropriate. Taxpayer's approach was to accept the overall methodology of the City's appraiser but to seek adjustments in the application to its property that would reduce the overall calculation of fair market value by specific amounts.

The City's argument would restrict the nature of the evidence that can overcome the presumption by demanding that the taxpayer come up with a complete alternative appraisal or a relevant comparable property. Taxpayer may, however, rely in part on the evidence put forward by the City, and there is no restriction on the method or manner of showing fair market value. See *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988). Our precedents are clear that we are unwilling to engage in debates about the quality of evidence in determining whether the presumption of validity is overcome. The City seeks to drag us back into that debate.

The City has recast its claim that taxpayer had to offer an independent appraisal or evidence of comparables in its second argument, maintaining that taxpayer failed to meet its burden of persuasion as a matter of law. With respect to the comparables, the Board decided to rely on the income capitalization approach to determine fair market value. This decision was within the Board's discretion. See *Beach Properties, Inc. v. Town of Ferrisburg*, 161 Vt. 368, 372, 640 A.2d 50, 52 (1994); *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 505, 367 A.2d 1363, 1368 (1976). Use of income capitalization was particularly appropriate in this case because taxpayer's expert witness urged it and the City's appraiser supported it. Income capitalization does not rely on comparisons of the value of

comparable properties.[2] The evidence the City asserts is indispensable became irrelevant once the approach to valuation was decided.

It is also misleading to claim that taxpayer did not present an alternative appraisal. It happened that taxpayer's appraisal agreed with that of the City on many points, but differed on four specifics. Taxpayer presented evidence on the four specifics, and was not required to introduce a wholly independent appraisal. It could, and did, rely on the City's evidence for much of the calculation of fair market value. See *In re Quechee Lakes Corp.*, 154 Vt. 543, 553–54, 580 A.2d 957, 963 (1990).

■ Finally, the City argues that the adjustments made by the Board in the vacancy rate and the administrative expenses were not supported by the evidence or findings. In assessing these claims, we reiterate that findings supported by evidence are conclusive, and the Board's action is "deemed presumptively correct." *Sondergeld v. Town of Hubbardton*, 150 Vt. at 571, 556 A.2d at 68. As we stated in *Breault v. Town of Jericho*, 155 Vt. 565, 569, 586 A.2d 1153, 1156 (1991), "Once the Board has shown some basis in evidence for its valuation, the [taxpayer] bears the burden of demonstrating that the exercise of discretion was clearly erroneous. . . . If the decision is within the range of rationality, it must be affirmed." (Citations omitted.)

We also point out that the issues raised here relate to the use of the income capitalization method to determine fair market value. We recently explored similar issues in applying the income capitalization method and cautioned: "Because relatively small adjustments to net income will significantly alter the resulting fair market value, it is important that expenses leading to net income be subject to scrutiny by the trier of fact." *Beach Properties*, 161 Vt. at 373, 640 A.2d at 53. It was exactly this scrutiny that led to the adjustments now being challenged.

■ The adjustment for administrative expenses was based on the testimony of a witness for taxpayer relating to the administrative

---

[2] The term "comparable properties" is used in property appraisal law to describe a number of different concepts. See *Bowen v. Town of Burke*, 153 Vt. 131, 134–36, 569 A.2d 452, 453–54 (1989) (Dooley, J., concurring). In *Beach Properties*, 161 Vt. at 373, 640 A.2d at 52, we pointed out that the income capitalization method requires analysis of "comparable investments." This is a different standard of comparability. There is no dispute that the six apartment projects used by the city appraiser to derive a capitalization rate are investments comparable to the Woolen Mill.

expenses experienced by comparable projects, as well as the actual expenses of the Woolen Mill over the past three years. Based on that testimony, the Board made some adjustment in the amount of administrative expenses although the final amount remained well below the actual expenses. The Board's action is fully supported by the evidence and its findings. The Board "sifted through the evidence," see *Roy v. Town of Barnet*, 147 Vt. 551, 551–52, 522 A.2d 225, 226 (1986) (Board has duty to sift through evidence and make clear statements), and explained its rationale succinctly but thoroughly, as this Court has long encouraged.

■ The adjustment for the vacancy rate was made for consistency of approach. Although taxpayer experienced a vacancy rate between 1% and 2% and the City's appraisal allowed a 3% vacancy rate, the testimony of the City's appraiser was that a 5% rate was used in deriving a capitalization rate from the similar New Hampshire project because it had to relate to "the expectation of the buyer at the time of the conveyance, not necessarily what the historical factors were." The Board concluded that consistency was necessary for proper application of the income capitalization method. Cf. *Beach Properties*, 161 Vt. at 374, 640 A.2d at 53 (fair market value must be based on potential for earning income as well as actual experience over a period of time). This determination is supported by the record and was within the Board's discretion.

*Affirmed.*