# Lake Morey Inn Golf Resort, Limited Partnership v. Town of Fairlee

[704 A.2d 785]

No. 96-435

Present: Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed November 7, 1997

*Elizabeth A. Glynn* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiff-Appellee.

*David A. Otterman* of *Otterman and Allen, P.C.*, Barre, for Defendant-Appellant.

**Gibson, J.** The Town of Fairlee appeals a State Board of Appraisers decision that valued a 164-room resort and conference center, owned by the Lake Morey Inn Golf Resort, at $3,275,000. The Town contends that (1) the market data approach is the best method to determine the value of the property, and the Board erred in rejecting the Town's comparables; (2) the Board improperly relied on the cost approach as the sole method to value the property; and (3) the Board's decision was not supported by adequate findings of fact. We hold that the method used by the Board to value the property was proper and supported by adequate findings of fact; we therefore affirm.

On December 28, 1992, the taxpayer purchased the subject property for $5,454,500 from Avery Inns of Vermont, Inc. The property is located on a 6.8-acre parcel of land on Lake Morey in the Town of Fairlee. On April 1, 1994, the Town assessed the property at a value of $5,525,100, and the taxpayer appealed the assessment to the Board of Civil Authority (BCA). When the BCA upheld the assessment, the taxpayer appealed to the Board of Appraisers.*

At the Board hearing, both the taxpayer's and the Town's appraisers presented evidence regarding the fair market value (FMV) of the property. The taxpayer's appraiser used three different valuation methods to arrive at his final figure: the market data, the income, and the cost approach. The three methods yielded the following values, respectively: $2,706,000, $2,932,000, and $2,798,400. The appraiser then reconciled the three and arrived at a final figure of $2,835,000 for the property, or approximately $17,000 per room.

The Town's appraiser used two methods to value the subject property: the market data and the income approach. The market data approach produced a value of $5,100,000, while the income approach generated a value of $4,400,000. Reconciling these two figures, the Town's appraiser arrived at a FMV of $5,000,000, or approximately $30,000 per room.

The Board, however, found numerous problems with both the Town's and the taxpayer's analyses. The Board determined that the market data evidence of both parties was weak and that the Town's analysis had a "significant error in reasoning." In addition, the Board found the income approaches of both parties to be weak and flawed. The Board noted that the taxpayer's analysis lacked probative value and that the Town's original analysis and its amended discounted-cash-flow analysis, which had been submitted prior to the hearing, contained numerous mathematical errors, omissions, and flawed assumptions. Finally, the Board found the taxpayer's cost approach to be mathematically flawed. While the Board noted that the original cost value of the property, as calculated by the taxpayer's appraiser, was sound, the Board found the appropriate physical-and-functional-depreciation factor to be 45%, rather than the 49.4% used by the taxpayer.

---

* On July 28, 1994, while the taxpayer was appealing the 1994 assessment, the taxpayer and Avery Inns of Vermont, Inc. entered into an agreement that reduced the property's sale price to $4,454,500. On April 1, 1995, the Town reassessed the property and reduced the assessment to $5,262,000. The taxpayer appealed to the BCA, which upheld the reassessment.

Because of the errors in both the taxpayer's and Town's methodologies, the Board discounted the parties' analyses. Instead, the Board conducted its own cost-approach analysis and arrived at a value of $3,282,100 for the property. In addition, the Board performed a market data analysis using data provided by both the taxpayer and the Town, arriving at a value of about $20,000 per room, or a total FMV of $3,280,000. Based on its review of the evidence, the Board determined that the property's value fell within a range of $3,250,000 to $3,300,000, and concluded that the FMV of the property was $3,275,000. The Town appealed.

The Board's decision will be deemed presumptively correct and its findings will be conclusive if they are supported by the evidence. See *Woolen Mill Assocs. v. City of Winooski*, 162 Vt. 461, 464, 648 A.2d 860, 863 (1994); see also *In re Southview Assocs.*, 153 Vt. 171, 178, 569 A.2d 501, 504 (1989) ("[W]e must defer to the Board when its findings are supported — even if the record contains contradictory evidence — and when its conclusions are rationally derived from its findings and based on a correct interpretation of the law."). Thus, if the record contains "some basis in evidence for [the Board's] valuation, the appellant bears the burden of demonstrating that the exercise of discretion was clearly erroneous." *Breault v. Town of Jericho*, 155 Vt. 565, 569, 586 A.2d 1153, 1156 (1991). With the standard of review in mind, we turn to the Town's appeal.

## I.

First, the Town contends that the market data approach is the best method to value the property, and the Board's failure to give adequate consideration to the Town's market data evidence was clearly erroneous. Our statutes do not prescribe how the Board should determine the fair market value of a property. See *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988); see also *Gionet v. Town of Goshen*, 152 Vt. 451, 453, 566 A.2d 1349, 1350 (1989) ("The unswerving goal of the statute is fair market valuation, but there is no single pathway to that goal."). In the past, "[t]he court has noted that the cost approach, the income approach, and the market data approach offer the parties means of determining fair market value." *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 505, 367 A.2d 1363, 1368 (1976). This list, however, is not exhaustive, and other methods may be used. The use of any or all methods is an "appropriate subject[] for expert testimony to be

properly evaluated by the [Board]," *id.,* and unless the use of a single method or combination of methods leads the Board astray, this Court will not second-guess its judgment. See *Town of Barnet v. Central Vt. Pub. Serv. Corp.*, 131 Vt. 578, 580-81, 313 A.2d 392, 393-94 (1973).

█ It is the duty of the Board "to explore all methods that help in determining fair market value" and to reject those "that do not lead toward fair market value." *Re Montpelier & Barre R.R.*, 135 Vt. 102, 105, 369 A.2d 1379, 1381-82 (1977). In some cases, the Board may be required to use one approach exclusively in order to determine the FMV; in other cases, the Board may have to use a different method or a combination of methods. Thus, the Town's unqualified contention that the market data approach is the "best" method is not invariably correct. The "best" method is decided by the Board, on a case-by-case basis, and as long as the method is supported by the findings, we will not disturb the Board's decision.

██ The Town contends that the Board erred by rejecting the market data approach without making findings concerning the comparable properties put forth by the Town's appraiser. We have consistently held that the Board's decision to use or reject comparable properties "'is not a question of law'" but instead "'is an evidentiary question.'" *Connors v. Town of Dorset*, 134 Vt. 233, 236, 356 A.2d 536, 538 (1976) (quoting *In re Town of Essex*, 125 Vt. 170, 172, 212 A.2d 623, 627 (1965)). From the Board's findings, it is evident that the Board found problems in using any or all of the taxpayer's and the Town's comparables. It is the Board's prerogative to judge the credibility and probative value of the evidence that is presented. See *id.* at 235, 356 A.2d at 537; see also *Sondergeld*, 150 Vt. at 571, 556 A.2d at 68 (noting that Board decision to weigh one party's evidence more heavily than other party's is not abuse of discretion). Admittedly, the Board provided a detailed rationale for rejecting or discounting each of the taxpayer's comparable properties while only briefly noting that "[the Town's comparables] differ from the subject property." This one-sentence rejection or discounting of the Town's comparable properties, however, is not error because the Board's subsequent analysis explains how and why the Board's conclusions were reached. We conclude that the Board's decision was supported by the evidence and adequate findings of fact, and was not clearly erroneous.

## II.

Secondly, the Town contends that the Board erroneously used only the cost approach to value the property. The Board's findings, however, clearly indicate that a combination of methods was used. The Board explicitly noted that it recomputed the value of the subject property using its own cost-approach analysis because the taxpayer's appraiser had used too high a physical-and-functional-depreciation factor and had committed a computational error. The Board arrived at a value of $3,282,100. In addition, the Board used a market data approach and noted that the comparable properties used by both appraisers, adjusted for size, location and other amenities, would produce a value of about $20,000 per room — a value in between the $17,000 per room value calculated by the taxpayer and the $30,000 per room value calculated by the Town — for total value of $3,280,000. Reconciling the computations, the Board arrived at a FMV of $3,275,000.

■ Under these facts, the Board's valuation would have been questionable if it had used the cost approach exclusively because, as the Board acknowledged, the "cost-computed analysis of value is not always the best method of determining value, especially for older, vintage properties." See The Appraisal Institute, *The Appraisal of Real Estate* 322 (10th ed. 1992) ("The difficulty of estimating the accrued depreciation in older improvements diminishes the reliability of the cost approach, unless adequate data are available."). The Board, however, also used the market data approach in combination with the cost approach. Because we find the Board's valuation of the property to be in accordance with the evidence and the statutory requirements for determining FMV, the Board's methodology was not clearly erroneous. See *Kruse v. Town of Westford*, 145 Vt. 368, 374, 488 A.2d 770, 774 (1985) (noting that Board, as trier of fact, is under no obligation to accept, interpret, or apply evidence in accordance with views of either party; it is within Board's discretion to determine weight, credibility and persuasive effect of evidence).

## III.

■ The Town's final contention — that the Board's decisions regarding the market data approach and the cost approach were not supported by adequate findings of fact — is also without merit. More specifically, the Town contends that: (1) the Board failed to make specific and detailed findings concerning what comparable properties

were rejected and which were used in the market data approach, (2) the Board's decision regarding the cost approach was not supported by adequate findings of fact, and (3) the Board's decision not to use the market data approach was not supported by its findings of fact. The Board is required to make its findings and determinations in writing and ensure that they are available to the parties. See 32 V.S.A. § 4467. We have consistently held that the principal inquiry in all of these cases is whether the Board's decision reveals to the parties and this Court how the decision was reached. See *Weyerhaeuser Co. v. Town of Hancock*, 151 Vt. 279, 287, 559 A.2d 158, 163 (1989). The rationale underlying these requirements is to assure this Court and the parties that the Board's determination of FMV was not a guess. See *New England Power Co.*, 134 Vt. at 503, 367 A.2d at 1367.

■ A careful review of the Board's findings establishes that it did not guess at the value of the subject property when it used the market data approach to value the property. The Board's market data valuation of $20,000 falls squarely between the Town's valuation of $30,000 and the taxpayer's valuation of $17,000. Because the Board's value is within the evidence and, more importantly, "within the range of rationality," *Woolen Mills Assocs.*, 162 Vt. at 464, 648 A.2d at 863, we find the Board's conclusion regarding the market data approach supported by the findings of fact, and we will not disturb the Board's decision. See *id.*

■ Secondly, we disagree that the Board's conclusions in regard to the use of the cost approach were not supported by adequate findings of fact. We have held previously that "[i]t is not necessary for [the Board] exercising discretion to explain the precise mathematics that led to a particular decision involving a sum of money." *Breault*, 155 Vt. at 568, 586 A.2d at 1155. But see *Sondergeld*, 150 Vt. at 570, 556 A.2d at 67 (surveying cases where Board's decision was not supported by adequate findings). Here, the Board explained its rationale in some detail. For example, while the Board accepted the taxpayer's determination of the original cost value because it was "based upon the highly recognized Marshall and Swift formula for determining replacement cost," the Board explicitly noted that the taxpayer's cost approach was computationally flawed. Further, the Board, after a site visit to the subject property, determined the physical-and-functional-depreciation factor to be 45% — close to the uncontested factor of 49.4% that was presented by the taxpayer.

Finally, the Board, in detail, described the formula and data it used to recompute the value of the resort. The Board's determinations regarding the cost approach were clear and concise, and its conclusion was supported by adequate findings of fact.

The Town's last contention — that the Board's decision not to use the market data approach was not supported by adequate findings of fact — is without merit because, as we noted previously, the Board did use the market data approach in combination with the cost approach to determine the FMV of the property. In short, we find that the Board did a thorough job, the Board's decision was fully explained and supported by adequate findings, and the Board's conclusion that the value of the property was $3,275,000 was within the evidence presented by both the Town and the taxpayer.

*Affirmed.*