## VERMONT ELECTRIC POWER CO., INC. v. TOWN OF VERNON

[807 A.2d 430]

No. 01-034

July 8, 2002. The Town of Vernon appeals the decision of the state appraiser reducing the listed value of five properties owned by Vermont Electric Power Company, Inc. (VELCO) within the Town. On appeal, the Town argues that the state appraiser erred by: (1) finding that VELCO had met its burden of persuasion; (2) relying on noncredible testimony; (3) failing to use an appropriate method for determining depreciation; and (4) failing to make adequate findings of fact. We affirm.

In 1999, the Town of Vernon revalued all property within the town for the grand list. The town lister revalued five properties owned by VELCO for the grand list including one substation, partially owned by VELCO, and four parcels of properties containing transmission lines, at $7,377,100. VELCO appealed the valuation to the Town of Vernon Board of Civil Authority (BCA). After a hearing, the BCA affirmed the town lister's valuation. VELCO appealed the BCA's decision to the state appraiser.[1]

The state appraiser held a hearing in October 2000, at which both the Town and VELCO presented testimony on the useful life of the properties and the method of depreciation that should be used in determining their fair market value. The Town and VELCO's witnesses agreed on the original cost of the prop-

---

[1] The state appraiser is appointed by the director of the Division of Property Valuation and Review to hear appeals from the board of civil authority, and takes the place of the panel formerly called "The State Board of Appraisers." 32 V.S.A. § 4465.

erty and trended those costs to current value using the "Handy-Whitman" indices, but applied these indices differently to arrive at different figures for the replacement cost new (RCN) of the properties. The main disagreement arose with regard to which method of depreciation, and what useful life, should be applied to the RCN to arrive at the fair market value of the properties. VELCO's witness testified that the transmission lines had a forty-year useful life and the substation had a thirty-year useful life, and applied the Iowa Curve method of depreciation to arrive at a fair market value of $4,127,939. In contrast, the Town's witness set the "actual, physical and functional" life of the properties at 90 years and applied a straight-line method of depreciation to arrive at a fair market value consistent with the town listing.

The state appraiser issued a decision in December 2000. He found that the Handy-Whitman indices along with the Iowa Curve method of depreciation were used in other towns, and were recommended by the State of Vermont as the appropriate set of methods for determining depreciation of transmission lines. Furthermore, the state appraiser found that the Iowa Curve method took into account the long term economic viability of the property, making it more appropriate for valuation of transmission lines. Moreover, he found that the straight-line method used by the Town's appraiser, which focused on physical deterioration of the property, failed to consider "deficiencies inherent in improvements [and physical] external factors that may offset the desirability of the property in the market place." Adopting VELCO's recommendation for a thirty-to-forty-year useful life, and applying the Iowa Curve to that useful life, the state appraiser set the fair market value of the properties at $4,130,530 and the listed value at $4,125,987. The Town appeals.

An appeal before the state appraiser is considered de novo. 32 V.S.A. § 4467. The state appraiser must make findings of fact "supporting [his] ultimate determination." *Beach Props., Inc. v. Town of Ferrisburg*, 161 Vt. 368, 371, 640 A.2d 50, 51 (1994). "Where conflicting evidence has been presented, the [state appraiser] must state clearly what evidence [he] credits and why, so that the parties and this Court will know how the decision was reached." *Id.* On review, this Court's function is to scrutinize the state appraiser's de novo review of the property appraisal, and we will uphold this determination if it is supported by the findings. *Kachadorian v. Town of Woodstock*, 149 Vt. 446, 448, 545 A.2d 509, 510 (1988). We will defer to the state appraiser when the determination is rationally derived from his findings, even where contradictory evidence exists. *Lake Morey Inn Golf Resort, Ltd. P'ship v. Town of Fairlee*, 167 Vt. 245, 248, 704 A.2d 785, 787 (1997).

The Town first argues that the state appraiser abused his discretion in finding for VELCO when VELCO had not met its burden of persuasion. We recognize a presumption of validity in the town lister's valuation, *New England Power Co. v. Town of Barnet*, 134 Vt. 498, 507, 367 A.2d 1363, 1369 (1976); however, "[a]ny admissible evidence can rebut the presumption, whatever we may ultimately think of the evidence's weight." *Woolen Mill Assocs. v. City of Winooski*, 162 Vt. 461, 463, 648 A.2d 860, 862 (1994). Ultimately, the Court must determine whether the testimony offered by the taxpayer challenging the listing can afford a rational basis for that which the taxpayer seeks to prove. *Id.*

VELCO presented the testimony of a former employee of the company who worked on VELCO's property taxes since at least 1971, indicating what the standard practice has been between several towns in Vermont and the company, specifically that the state and towns have accepted use of the Handy-Whitman indices and the Iowa Curve

method as well as a thirty-to-forty-year useful life for substations and transmission lines respectively. VELCO produced a 1991 letter to VELCO's then president from the director of the Division of Property Valuation and Review in the State Department of Taxes that indicated the state's preference and recommended use of Handy-Whitman indices and the Iowa Curve method for use in the appraisal of transmission lines. VELCO submitted the indicies and tables used to calculate its suggested method of reaching fair market value. This evidence is sufficient to rebut the presumption of validity to the town lister's appraisal with respect to the method of depreciation applied to reach fair market value, particularly as we have previously characterized the presumption of validity in favor of the town listers as a "bursting bubble." *Id.* The state appraiser did not abuse his discretion by finding that VELCO overcame the town lister's presumption of validity with respect to either the useful life of the properties or the method of depreciation that should be applied to determine the fair market value of the properties.

Next, the Town argues that the state appraiser abused his discretion by relying on VELCO's witness's testimony. The Town contends that neither the record nor the findings reflect any evidence that VELCO's witness had a thorough knowledge of the subject properties and it was therefore error for the appraiser to base his fair market value determination on VELCO's evidence. The VELCO witness in question had twenty years of experience as a VELCO employee calculating state and local taxes for utility properties. The witness was familiar with the Handy-Whitman/Iowa Curve method and explained how fair market value of the subject properties was calculated using the method. As VELCO points out, the Town's complaint goes not to the admissibility of the testimony but to the weight it is to be accorded. "Opinions of

well informed persons based upon the purposes for which the property is suited are to be considered in arriving at fair market value." *Kachadorian,* 149 Vt. at 450, 545 A.2d at 512 (internal quotations omitted). The testimony was well within the province of the state appraiser to accept or reject. [2]

The Town next asserts that the state appraiser committed reversible error by failing to use the appropriate method of depreciation. It is within the discretion of the state appraiser to determine the most appropriate method for arriving at fair market value. *Lake Morey Inn Golf Resort, Ltd. P'ship,* 167 Vt. at 248-49, 704 A.2d at 787. We have previously stated that the Iowa Curve method of depreciation, when used in conjunction with the Handy-Whitman indices, applies "an adjusted index sensitive to current replacement costs and regional factors, as well as a depreciation factor based on the remaining useful life of utility property." *Vermont Elec. Power Co. v. Town of Cavendish,* 158 Vt. 369, 377, 611 A.2d 389, 393 (1992). The state appraiser's decision to use these methods is supported by testimony indicating that they

---

[2] The Town also asserts that the state appraiser's erroneous finding that the Town's witness was not a licensed appraiser when, in fact, he is licensed in New Hampshire should compel reversal. We disagree. The state appraiser accurately noted that the Town's witness is not a licensed appraiser in Vermont. Moreover, the state appraiser's rejection of the recommendation of the Town's witness that the useful life of the properties be set at ninety years was unrelated to licensure. The state appraiser found that the Town's witness offered no details in support of the ninety-year useful life beyond "an unsubstantial observance that he had witnessed steel pole structures standing in continued use for a long time — up to ninety years."

were standard practice in Vermont, endorsed by the State Department of Taxes, and most appropriate for use with transmission lines. The state appraiser considered in his determination the letter from the state recommending the use of the Handy-Whitman indices and the Iowa Curve method for calculating depreciation on transmission lines, as well as our decision in *Vermont Electric Power Co. v. Town of Cavendish*. "The unswerving goal of the statute is fair market valuation, but there is no single pathway to that goal." *Gionet v. Town of Goshen*, 152 Vt. 451, 453, 566 A.2d 1349, 1350 (1989). Accordingly, we find no error.

Lastly, the Town claims that the state appraiser committed reversible error by failing to make specific and clear findings as to how the fair market value of the property was reached. The state appraiser has a duty to make clear findings and state how his decision was reached. *Saufroy v. Town of Danville*, 148 Vt. 624, 625, 538 A.2d 168, 168-69 (1987). A mere recitation of the contentions of the parties is not sufficient to support the judgment. *Id.* In essence, the issue raised by the Town here is — as it was in *Saufroy* — "whether the [state appraiser] supported [his] decision so we can determine how that decision was reached." *Id.* (internal citations omitted). The Town contends that the state appraiser's findings are so deficient as a matter of law that it cannot be determined (a) how the state appraiser reached his decision of RCN, and (b) how the state appraiser determined the interest rate that should be applied with the Iowa Curve calculations.

In closing remarks, the Town's witness summarized the Town's position as "a depreciation disagreement [which] all boils down to use of the [Iowa] curve, as opposed to use of the straight line of comparable observed depreciation." We first note that although the Town requested and was granted leave to submit proposed findings of fact and conclusions of law, the record does not indicate that it did so. Moreover, as a review of the record makes clear, the Town's alternative to the Iowa Curve evidence introduced by VELCO was entirely dependent upon the acceptance of the Town's assertion that a ninety-year life should serve as the basis for a depreciation calculation.[3]

While it is true that the state appraiser did not specifically address the RCN or interest components to the extent now sought by the Town on appeal, we are not confronted with findings so deficient that we have to speculate on how the conclusion was reached. As to the RCN the state appraiser found, "[b]oth the [a]ppellant and the Town utilized a cost approach methodology drawing on the Handy-Whitman indexes . . . to determine . . . (RCN). The two parties applied the published indices in a slightly different way resulting in VELCO estimating RCN $487,690.95 higher than the town." Moreover, even assuming this explanation is insufficient, it is difficult to see how the Town was prejudiced by the RCN proposed by VELCO since a higher RCN *increases* VELCO's tax burden.

Nor are we persuaded that the state appraiser was without sufficient basis as a matter of law to adopt the Iowa Curve method including its reference to 0% interest rate. The state appraiser found:

> The [a]ppellant utilized the Iowa Curve method consistent with their method in many other cities and towns in Vermont. The Vermont Department of Taxes — Property Valuation and Review in fact recommended this method.

---

[3] State appraiser: "[F]or purposes of evaluation, you are going to propose to us an observed depreciation pattern, and I need to have you go ahead and tell us how that was determined, and the actual mathematics of it? A: The mathematics of the pattern are straight line 90 years."

The Iowa Curve is based upon retirement patterns of hundreds of industrial assets. Essentially this statistical study asserts that depreciation is NOT straight lined, but curvilinear. This method acknowledges a schedule of 30 to 40 year economic life estimates but compensates for remaining functional utility (a factor other than age) by leveling off after accelerated depreciation thereby avoiding excessive depreciation by keeping the depreciation from going to zero . . . .

The use of the Iowa Curve on the other hand *is* an "economic life" algorithm because it reflects all the components of depreciation based upon experience surveys for specific types of properties. The evidence indicates that the Iowa Curve Tables [are] based upon economic service mortality curves, which go beyond consideration of just physical deterioration. As such, they take into consideration economic and functional obsolescence as well. The mortality curves can reflect most, if not all, causes of depreciation, both physical and economical.

(footnotes and internal quotations omitted).

The Town asserts that the state appraiser lacked a credible basis to choose a 0% interest rate column from the five percentages reflected within the Iowa Curve tables (0%, 2%, 4%, 6%, 8%) because VELCO's own witness "testified that he did not know why the company used the zero percent interest rate."[4]

---

[4] The statement of VELCO's witness that he "did not know" the basis for selecting the 0% interest rate column arose in the broader context of his testimony in sup-

Where the record contains "some basis in evidence for [the state appraiser's] valuation, the appellant bears the burden of demonstrating that the exercise of discretion was clearly erroneous." *Lake Morey Inn Golf Resort, Ltd. P'ship*, 167 Vt. at 248, 704 A.2d at 787. The Town has not met that burden here.

*Affirmed.*

---

port of the applicability of the Iowa Curve table. He testified:

> Again we use the column for the zero interest rate. I've been asked why we chose that, and I really don't know, other than that's the one the state brought to us, and that's why [we] have continued to use it . . . . we feel [it makes] an equitable table, because it recognizes that some of these 40-[year] assets have a life that exceeds 40 years, although on average, the assumption is that a significant portion of them will have a physical life of 40 years or less, or an average of forty years.