2014 VT 93



Vermont Transco LLC v. Town of
Vernon (2013-243)

 

2014 VT 93

 

[Filed 08-Aug-2014]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2014 VT 93
 
  


 No. 2013-243
 
  


 Vermont Transco LLC
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Property Valuation and Review
 Division
 
 
  
 
 
  
 
 
 Town of Vernon
 
 
 May Term, 2014
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Norman
 E. Wright, State Appraiser
 
 
  
 
 
  
 
 
  
 
 
 
 
 
 Allan R. Keyes, Thomas M. Dowling, and Thomas S. Valente (On
the Brief) of Ryan Smith &

  Carbine, Ltd., Rutland, for Plaintiff-Appellant.

 

Richard H. Coutant of Salmon & Nostrand, Bellows Falls,
for Defendant-Appellee. 

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and
Crawford, JJ.

 

 

¶ 1.            
CRAWFORD, J.   This property tax appeal concerns the
valuation of five electrical substations, seven transmission lines, a
fiber-optic line, land, and utility easements located within the Town of
Vernon.  Taxpayer Vermont Transco LLC challenges a decision of the state
appraiser fixing the 2011 listed value of taxpayer’s utility property in the
Town at $92 million.  We reverse and remand for further findings regarding
the lifespan of the property to be used in calculating depreciation.

¶ 2.            
The equipment at issue in this case was designed and installed to handle
the transmission of electric power generated by the Vermont Yankee Nuclear
Power Plant and the Vernon Hydroelectric Station.  Taxpayer is the
successor to Vermont Electric Power Company, Inc. (VELCO), which operates
Vermont’s electric transmission system.    

¶ 3.            
The town listers set a value of $92,023,693 on the property effective
April 1, 2011.  This value was upheld by the Town of Vernon Board of Civil
Authority.  Taxpayer appealed to the state appraiser pursuant to 32 V.S.A.
§§ 4461-4467.   

¶ 4.            
On appeal to the state appraiser, the principal issue was the correct
method of calculating depreciation with respect to the electrical equipment
that comprises almost the entire value of the property.  In addition,
taxpayer and the Town disagreed about whether the valuation should include the
value of utility easements and rights of way held by taxpayer, estimated by the
Town’s appraiser at $277,100.  Finally, the parties disagreed about
whether to apply depreciation for certain equipment’s first year of
life.   

¶ 5.            
In May 2013, the state appraiser issued a ruling setting the total value
of the property at $92,023,700.   The state appraiser agreed with the
Town and its appraiser that an appraisal based on replacement cost new,
depreciated in a straight line, provided the most accurate basis for estimating
the value of the improvements.  The state appraiser did not address
taxpayer’s arguments that easements cannot be taxed and that depreciation
should have been taken for 2010, the first year of service.  This
appeal followed.  

¶ 6.            
Taxpayer raises four issues on appeal.  First, it argues that the
state appraiser should have used an alternative nonlinear depreciation
schedule—the “Iowa Curve” method—because that method was previously approved by
this Court in reviewing the method of property tax appraisal in Vermont
Electric Power Co. v. Town of Vernon, 174 Vt. 471, 807 A.2d 430 (2002).
 Second, taxpayer contends that the state appraiser’s decision on fair
market value is not supported by a sufficient analysis of the “core factual
issues, including whether fair market value is best estimated by the economic
or physical life of the assets, and what those lives are.”  Third,
taxpayer takes issue with the state appraiser’s decision to follow the Town’s
appraiser in not depreciating assets during the first year of service. 
Finally, taxpayer challenges the state appraiser’s decision to include an
appraised value for the utility easements. 

¶ 7.            
In an appeal to the state appraiser, a town’s property appraisal is
presumed to be valid and legal.  City of Barre v. Town of Orange,
152 Vt. 442, 444, 566 A.2d 951, 952 (1989).  If the taxpayer introduces
evidence that his or her property was assessed above fair market value, the presumption
disappears.  Vanderminden v. Town of Wells, 2013 VT 49, ¶ 8,
194 Vt. 96, 75 A.3d 598.  It is then up to the town to introduce evidence
showing “either that it substantially complied with the relevant constitutional
and statutory requirements or that its valuation was supported by independent
evidence of fair market value.”  Id. ¶ 8 (quotation omitted). 
The taxpayer has the ultimate burden of proving that the appraisal was
incorrect.  Adams v. Town of West Haven, 147 Vt. 618, 620 n.*, 523
A.2d 1244, 1245 n.* (1987).  

¶ 8.            
We will not disturb the state appraiser’s findings of fact unless they
are clearly erroneous.  Vanderminden, 2013 VT 49, ¶ 9. 
“Our review of legal conclusions, by contrast, is nondeferential and plenary.” Barnett
v. Town of Wolcott, 2009 VT 32, ¶ 5, 185 Vt. 627, 970 A.2d 1281
(mem.).

I. 
Depreciation Method

¶ 9.            
This is the second time in less than fifteen years that the state
appraiser and this Court have considered the depreciation schedule and
appraised value of taxpayer’s transmission equipment and realty within the
Town.  See Town of Vernon, 174 Vt. 471, 807 A.2d 430 (affirming
town’s valuation of taxpayer’s utility property).  In 1999, the Town
conducted a town-wide reappraisal.  VELCO, taxpayer’s predecessor in
interest, appealed the Town’s valuation to the state appraiser.  
Although VELCO owned less property than taxpayer in this case (only one
substation and four parcels containing transmission lines), the issues resolved
by the state appraiser then were similar to the issues raised before the state
appraiser in this case.  In particular, the parties and their expert
appraisers disagreed about the appropriate depreciation methodology for the
electrical equipment.  The state appraiser accepted the methodology used
by VELCO’s expert, including the application of the Iowa Curve method to the
useful life of the equipment.[1]
 Id. at 472, 807 A.2d at 433. 

¶ 10.        
We affirmed the state appraiser on the ground that as the fact finder,
the state appraiser exercised his discretion appropriately in choosing the Iowa
Curve method over straight-line depreciation.  Id. at 473-74, 807
A.2d at 434-35.  We noted that the Iowa Curve method had been employed in
a previous tax appeal, Vermont Electric Power Co. v. Town of Cavendish,
158 Vt. 369, 611 A.2d 389 (1992).  174 Vt. at 473, 807 A.2d at 435. 
We ruled that the state appraiser’s decision to use the Iowa Curve method was
supported at the hearing below by “testimony indicating that [this method was]
standard practice in Vermont, endorsed by the State Department of Taxes, and
most appropriate for use with transmission lines.”  Id. at 473-74,
807 A.2d at 435.  We further noted that “[t]he unswerving goal of the
statute is fair market valuation, but there is no single pathway to that
goal.”  Id. at 474, 807 A.2d at 435.

¶ 11.        
In this appeal, taxpayer claims that the state appraiser erred in
failing to adopt the Iowa Curve method as a matter of law on the basis of this
Court’s decisions in Town of Vernon and Town of Cavendish.

¶ 12.        
At the hearing before the state appraiser in this matter, an accountant
employed by taxpayer, Sharon Tucker, testified that in the valuation taxpayer
submitted to the Town it used the Iowa Curve method to calculate depreciation.
 Ms. Tucker testified that taxpayer adjusted the value of all equipment
owned by taxpayer through the use of the Handy-Whitman Index of Public Utility
Construction Costs to determine its “trended” or “replacement cost new” value.[2]  Taxpayer assigned each piece of
equipment to a thirty- or forty-year curve and calculated a depreciated value
on that basis.   If a piece of equipment had been owned for longer
than the depreciation schedule, taxpayer assigned a fixed value of 24.745
%.  This calculation resulted in a value of $80,950,830 for the equipment
alone.  Ms. Tucker testified that taxpayer used the Iowa Curve method
because the method had been approved by the State and this Court in Town of
Vernon. 

¶ 13.        
Taxpayer also presented expert testimony from a professional appraiser,
George Silver.  Mr. Silver testified that he employed three appraisal
methods (comparable sales, cost, and income-based) to determine fair market
value, and determined that the cost approach was most appropriate.
 Depreciation was relevant to his cost analysis.  He employed
straight-line depreciation over periods ranging from forty-seven-and-a-half to
sixty years for different classes of equipment.  He calculated a
total value of $83,100,000, of which $79,775,250 was attributed to depreciable
equipment.  The remainder is land or improvements to land not subject to
depreciation.  Mr. Silver testified that he did not use the Iowa Curve
method of depreciation for calculating the fair market value of taxpayer’s
equipment because he “ha[d] not seen the Iowa Curve being used in market
transaction[s], period.” 

¶ 14.        
George Sansoucy, an appraiser retained by the Town as an expert witness,
employed the same three appraisal methods as Mr. Silver, and also concluded
that the cost approach was the best method for valuing taxpayer’s
property.  He also used a straight-line depreciation method in applying
the cost approach.  He used longer periods of estimated future life for
the equipment, ranging from sixty-five to ninety years.  He calculated a
total value of $92,023,700, of which $91,028,800 was attributed to depreciable
equipment.  Mr. Sansoucy was critical of the Iowa Curve method, noting
that the curves had not been updated since 1942, and that they were not
developed for high-voltage transmission lines, such as taxpayer’s, which have a
relatively long useful life and are not retired in the same fashion as other
industrial equipment.  He testified that the trend in the utility industry
was to move away from the Iowa Curve method because it depreciates property too
quickly.  He further noted that the Iowa Curve method is typically used
for book value analysis but not for appraising property for ad valorem tax
purposes.  The state appraiser found the Town’s depreciation method
persuasive and adopted its valuation.  

¶ 15.        
“It is within the discretion of the state appraiser to determine the
most appropriate method for arriving at fair market value,” including the
method of depreciation.  Town of Vernon, 174 Vt. at 473, 807 A.2d
at 434.  Taxpayer argues, however, that principles of finality preclude
the Town and the state appraiser from using a different method of depreciation
for taxpayer’s property than has been approved in prior cases.  

¶ 16.        
“To properly preserve an issue for appeal a party must present the issue
with specificity and clarity in a manner which gives the trial court a fair opportunity
to rule on it.”  State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d
1004, 1009 (1994).  The same principle applies to appeals from
administrative agencies.  In re Green Mountain Power Corp., 2012 VT
89, ¶ 73 n.7, 192 Vt. 429, 60 A.3d 654.   

¶ 17.        
 At no point did taxpayer argue below that the state appraiser was
required to use the Iowa Curve method, or that the Town was precluded or
estopped from arguing for the use of a different depreciation method than the
Iowa Curves.  At the hearing, taxpayer’s accountant stated only that
taxpayer used the Iowa Curve method because that is the method it had used in
the past, and its use was approved in Town of Vernon.  In the
proposed findings of fact and conclusions of law that taxpayer submitted to the
state appraiser after the hearing, taxpayer stated that the Iowa Curve method
“has been preferred and recommended by the Vermont Department of
Taxes Division of Property Valuation and Review” and that the method “was
specifically approved by the Vermont Supreme Court in the Town of Vernon
case.”  Taxpayer did not argue, however, that the Town could not present
an alternative method of depreciation.  Nor did taxpayer argue that the
state appraiser had to use the Iowa Curve method.  Indeed, taxpayer’s own appraiser
used the straight-line method of depreciation, undermining its argument that no
other method was acceptable.   Not until this appeal did taxpayer
argue that the state appraiser was barred by principles of issue preclusion
from using another method.  Taxpayer therefore failed to preserve this
issue, and we will not address it here.   

II.
 Lifespan of the Equipment

¶ 18.        
Taxpayer’s second point of error is that the state appraiser accepted
the Town’s valuation without making specific findings concerning the lifespans
of the equipment to be used in depreciation or addressing the proper approach
for estimating those lifespans.  In its prior decision, the state
appraiser set the useful life of taxpayer’s transmission lines at forty years
and the substation at thirty years.  Town of Vernon, 174 Vt. at
472, 807 A.2d at 433.  In the course of testimony in this case, taxpayer’s
accountant set the average life of the transmission equipment at thirty to
forty years.  Taxpayer’s appraiser used an “economic life” approach,
resulting in estimated lifespans of fifty to sixty years for the equipment.  The
Town’s appraiser employed a “useful life” approach, resulting in estimated
lifespans of sixty-five to ninety years.    

¶ 19.        
Because there have been great changes in the quantity and value of
taxpayer’s assets, the state appraiser was not bound by the lifespan figures
employed in the 1999 tax year.  Taxpayer does not make this argument
either.  Instead, the state appraiser was obligated to make findings
concerning the lifespan of the equipment that are sufficiently detailed for us
to determine whether they have support in the record. See id. at 474,
807 A.2d at 435 (“The state appraiser has a duty to make clear findings and
state how his decision was reached. A mere recitation of the contentions of the
parties is not sufficient to support the judgment.” (citation omitted)). 
We agree with taxpayer that although the state appraiser accepted the Town’s
estimates of useful life as part of a general approval of its methodology, few
reasons are provided.  The state appraiser’s decision states only that “I
am persuaded that the town’s approach to depreciation is more appropriate than
that advanced by Transco.  The evidence supports the belief that a 65 year
useful life span as advocated by the Town more accurately reflects Transco’s
assets in this appeal.”  This finding is insufficient.  It is beyond
the scope of a state appraiser decision to calculate the depreciated value of
each stick of furniture, but it is necessary to a fair process that the basis
for accepting the Town’s depreciation figures receive a more complete
explanation.  See Kachadorian v. Town of Woodstock, 144 Vt. 348,
351, 477 A.2d 965, 967 (1984) (explaining that state appraiser’s “[f]indings of
fact must state clearly what was decided and how the decision was reached”
(quotation omitted)).  We therefore remand for further findings on
lifespans to be used for calculating depreciation.

III. 
First Year of Life

¶ 20.        
Taxpayer next argues that equipment acquired during calendar year 2010
and valued as new when taxpayer closed its books at the end of the that year
should have been depreciated for one year as of April 2011.  We agree with
the Town that the state appraiser did not abuse its discretion by declining to
accept taxpayer’s argument.  In seeking to take a full year of
depreciation for assets not added to the balance sheet until the end of the
year and simultaneously overlooking the need to adjust the purchase price
upward to reflect inflation, taxpayer’s approach violated accounting practices
described by the Town’s witness as long-standing and conventional.  The
state appraiser did not abuse its discretion in accepting the Town’s evidence
on this point.  

¶ 21.        
The cases cited by taxpayer do not alter this conclusion.  In the
first, New England Power Co. v. Town of Barnet, we stated that
“[o]riginal cost less depreciation may be a method
of arriving at fair market value if it reflects present costs.”  134 Vt.
498, 505-06, 367 A.2d 1363, 1368 (1976).  While this statement is
generally true, the testimony in this case showed that depreciation in the
first year of life was inappropriate because the equipment at issue was less
than one year old and therefore should be assessed at its original cost for
that year (adjusted or “trended” for inflation).   The treatment of
depreciation for very recently acquired equipment was not considered in Town
of Barnet. 

¶ 22.        
In the second case cited by taxpayer, In re 75,629 Shares of Common
Stock of Trapp Family Lodge, Inc., 169 Vt. 82, 725 A.2d 927 (1999), we
affirmed the trial court’s valuation of shares held by dissenting shareholders
who objected to the merger of a corporation.  We rejected the
corporation’s argument that the evidence did not support the shareholders’
expert’s use of a certain discount rate, noting that the discount rates used by
the shareholders’ expert was similar to that of the corporation’s expert and
that the difference between their valuations stemmed in part from the fact that
the corporation’s expert “fail[ed] to account for depreciation in a generally
accepted method.”  Id. at 89, 725 A.2d at 933.  Trapp
Family Lodge was not a property tax case, and we specifically noted that
“methods of stock valuation used in tax, probate or divorce cases to determine
fair market value are inapposite to the determination of ‘fair value’ under the
dissenters’ rights statute.”  Id. at 86, 725 A.2d at 931. 
Regardless, the above-quoted language does not support taxpayer’s argument
because the evidence in this case showed that taking depreciation for the first
year of life was not a generally accepted method of accounting in the utility
industry.  See Amoco Prod. Co. v. Wyo. State Bd. of Equalization,
899 P.2d 855, 859 (Wyo. 1995) (affirming county assessor’s valuation of
taxpayer’s oil field equipment and holding that evidence supported
determination that equipment should not be depreciated in its first year of
life because equipment was new). 

IV.
 Inclusion of Utility Easements

¶ 23.        
This Court has previously held that easements are not subject to
Vermont’s municipal property tax.  Vill. of Lyndonville v. Town of
Burke, 146 Vt. 435, 438, 505 A.2d 1207, 1209 (1985).  Although this
principle was established in the special context of payment of property tax by
one municipality to another, our decision reflected a broader underlying
concern that it is impossible to identify, value and tax the multitude of
easements in a reliable, efficient manner.  See id. (“It appears
unreasonable to conclude that the Legislature intended to cast upon the listers
the burden of determining the nature of the titles of various owners of
different interests in a piece of real estate.” (quotation omitted)). 
Instead, the value of the fee interest is taxed to the fee owner without
setoffs for easements conveyed to third parties.  The Town’s principal
rationale for changing this rule in the case of utility easements is that they
are large, obvious, and more valuable than an easement providing seasonal
access to a landlocked wood lot.  The statutory provisions which govern
the real estate tax make no distinction between great and small easements, or
between those which are used for the transmission of electricity and those
which provide access or convey well rights.   In the absence of a
statute singling out utility easements for different treatment, we will
continue to follow Village of Lyndonville in excluding easements from
the grand list of properties subject to tax.   The state appraiser
therefore erred by including the value of the easements in its valuation. 


Reversed and
remanded for further proceedings consistent with this opinion. 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  

 

¶ 24.        
ROBINSON, J., concurring.   I join the majority’s
opinion in its entirety, but write separately to flag an issue that warrants
consideration by the legislative and executive branches.[3]

¶ 25.        
Facilities used in the generation, transmission, or distribution of
electric power are valued and included as real estate in a town’s grand
list.  32 V.S.A. § 3602a.  The responsibility for assessing real
estate within a town falls to the town listers in the first instance, and then
on review to a town’s board of civil authority.  Id. §§ 4041,
4221-4224, 4407-4411.  The statutory guidepost for assessing property is
fair market value.  Id. §§ 3620 (“Electric utility poles,
lines and fixtures . . . shall be taxed at appraisal
value . . . ”), 3481(1) (appraisal value is estimated fair
market value), 4041 (lister to appraise property at its fair market
value).  On appeal from the board of civil authority, the taxpayer bears
the burden of persuasion.  Littlefield v. Town of Brighton, 151 Vt.
600, 601, 563 A.2d 998, 999 (1989).  

¶ 26.        
Under this system, the listers and boards of civil authority of
different towns may use different appraisal methods for valuing similar kinds
of property.  We have recognized that “[a]ppraisal is far from an exact
science.”  Bowen v. Town of Burke, 153 Vt. 131, 133, 569 A.2d 452,
453 (1989).  If persuasive expert testimony potentially supports each of
the different methods used, the various tax assessments relying on differing
methodologies may be upheld on appeal.  There is no statute, rule, or
other authority that requires a uniform approach to valuing, for example, the
type of electric transmission facilities at issue in this case.

¶ 27.        
The Division of Property Valuation and Review (PVR) of the Department of
Taxes is empowered to adopt rules “to provide for the uniform administration of
the property tax,” 32 V.S.A. § 3411(3), but apparently has not adopted any
rules concerning the valuation of electric transmission facilities.  PVR
provides technical assistance and instruction to town
listers, and helps towns administer property taxes, including assistance with classes of property that are
difficult to appraise.  Id. § 3411(5), (10); see also id.
§ 3436 (providing for education programs by the PVR director for municipal
listers and assessors).  Apparently in that capacity, PVR has recommended
since at least 1991 that transmission lines be valued using actual costs
determined using Handy-Whitman tables, adjusted using Iowa Curve
depreciation.  That recommendation, however, is not binding on the
listers.  See, e.g., Franks v. Town of Essex, 2013 VT 84,
¶ 14, ___ Vt. ___, 87 A.3d 418 (upholding state appraiser’s decision
rejecting valuation methodology recommended by PVR).

¶ 28.        
The non-uniformity of appraisal methodologies from town to town may not
be a problem in the context of garden variety appraisals of residential and
commercial property.  But see Vanderminden v. Town of Wells, 2013
VT 49, ¶ 24, 194 Vt. 96, 75 A.3d 598 (urging Legislature or PVR to develop
rules for valuing property that lies in multiple towns).  But in this
case, a single utility owns transmission lines and other distribution
facilities in dozens of towns throughout the state.  My sense from the
record and our prior cases is that, in general, towns throughout the state have
for some years used the methodology recommended by PVR.  See Vermont
Elec. Power Co. v. Town of Vernon, 174 Vt. 471, 472, 473-74, 807 A.2d 430,
434-35 (2002) (noting testimony that the Handy-Whitman/Iowa Curve method was
standard practice); Vermont Elec. Power Co. v. Town of Cavendish, 158
Vt. 369, 371, 611 A.2d 389, 390 (1992) (noting that State Board of Appraisers
used the Handy-Whitman/Iowa Curve formula to establish the fair market value of
electric transmission facilities).  Our decision today, which is supported
by the statutory and regulatory scheme and the record in this case, may well
lead to a patchwork of town valuation practices, so that miles and miles of
transmission lines and infrastructure may be depreciated and thus valued and
taxed very differently from town to town.  

¶ 29.        
To the extent that a town applies an average equalization ratio to its
initial valuation of the transmission facilities, calculated on the basis of all
classes of properties, see 32 V.S.A. § 4467; Town of Cavendish,
158 Vt. at 373-74, 611 A.2d at 391-92, that adjustment may not wash out
substantial variations in the appraisals of essentially the same transmission facilities
from one town to the next.  Moreover, a patchwork scheme imposes on a
transmission utility taxpayer the added burden of depreciating and valuing its
hundreds of miles of transmission lines in small, town-by-town
increments.  And a utility seeking predictability, consistency and
uniformity might have to appeal dozens of tax assessments, still facing the
possibility that disparate adjudicators may be persuaded to adopt different
methods.

¶ 30.        
PVR may be empowered to fix this potential problem through
rulemaking.  See 32 V.S.A. § 3411(3).  The Legislature is
likewise well-positioned to address the question of uniformity in appraising
electric utility transmission facilities.  I offer the matter for
consideration by both.    


  
 
 
  
 
 
 Associate Justice
 
  

 

¶ 31.        
DOOLEY, J., concurring and dissenting.   This
high-value complex case was tried by lawyers for the taxpayer and the Town to
an administrative hearing officer appointed by the Director of Property
Valuation and Review.  The fundamental deficiency in the decision is that
it consists only of five pages of recitations of the evidence, followed by a
short conclusory statement that the hearing officer, called the state
appraiser, found the Town’s expert witness more persuasive than the experts
presented by the taxpayer.  Its conclusion was “I find the appellant was
not able to overcome the Town’s market and assessed value and it shall be set
in the 2011 grand list at $92,023,700.”

¶ 32.        
We have repeatedly held, and particularly in property tax appeals, that
recitations of the evidence are not findings of fact, and that findings of fact
are required.[4] 
See Beach Props., Inc. v. Town of Ferrisburg, 161 Vt. 368, 371, 640 A.2d
50, 51 (1994); Saufroy v. Town of Danville, 148 Vt. 624, 625, 538 A.2d
168, 168-69 (1987).  Where there is conflicting evidence, the hearing
officer “must state clearly what evidence it credits and why, so that the
parties and this Court will know how the decision was reached.”  Beach
Props., Inc., 161 Vt. at 371, 640 A.2d at 51.  A valuation decision
must be supported by adequate findings, or it will not be affirmed.  Id.

¶ 33.        
Ironically, one of the main arguments made in the previous case about
the valuation of this property, Vermont Electric Power Co. v. Town of Vernon,
was that the hearing officer’s decision failed to contain clear findings and an
explanation of how the decision was reached.  174 Vt. 471, 807 A.2d 430
(2002).  In part because the Town squarely presented the dispute as
turning on whether to adopt the Iowa Curve for calculating depreciation and the
life expectancy of the property, and because the primary deficiency actually
helped the Town, we found we did not have “to speculate on how the conclusion
was reached.”  Id. at 474, 807 A.2d at 435.

¶ 34.        
This case presents a more extreme example of the deficiencies in the
earlier administrative decision.  There are no valid findings of fact, and
we do have to speculate on how the hearing officer reached his decision on the
elements of the value of the property and, therefore, on the property as a
whole.  It is a poor quality decision that does not meet the minimum
standards we have announced in many decisions.[5]  The parties filed extensive
requests for findings, which the hearing officer could easily have used to make
findings of fact demonstrating the rationale for the decision.  Instead,
those requests for findings were largely wasted.

¶ 35.        
I do not believe we can uphold any of the decision, including the result
with respect to first-year depreciation and the rejection of the use of the
Iowa Curve.  Although I agree with the majority that taxpayer failed to
preserve its claim preclusion argument, I do not agree that we can affirm the
hearing officer’s decision to use straight-line depreciation without adequate
findings.  To summarize, I agree with sections I and IV of the majority
decision.  I also agree with section II, but do not believe it goes far
enough.  I cannot agree with section III because the hearing officer’s
decision was not supported by adequate findings.

¶ 36.        
This case raises a strong question as to whether the administrative
process is up to the decisionmaking that is called for.  At one point in
the past, we reversed and remanded virtually every decision that came from the
administrative hearing authority for property tax appeals, usually because of
inadequate findings.  See, e.g., Spencer v. Town of Danville, 148
Vt. 626, 538 A.2d 169 (1987); Saufroy, 148 Vt. 624, 538 A.2d 168; Gouin
v. Town of Halifax, 148 Vt. 524, 535 A.2d 788 (1987); Adams v. Town of
West Haven, 147 Vt. 618, 523 A.2d 1244 (1987); Roy v. Town of Barnet,
147 Vt. 551, 522 A.2d 225 (1986).  Over time, the appeals process was
reformed to the single hearing officer model we now have, and the quality of
the adjudication improved so that most administrative decisions are affirmed by
this Court.  Nevertheless, the quality of adjudication of cases involving
high-value commercial and industrial properties has continued to raise
concerns.  Examples are this case, the previous case involving the same
property, and the Beach Properties case, 161 Vt. 368, 640 A.2d 50, which
involved a large resort.

¶ 37.        
The Legislature has offered the appealing party a choice in property tax
cases: to appeal to either (a) the Director of Property Valuation and Review,
or (b) the superior court.  32 V.S.A. § 4461(a).  The taxpayer
chose the administrative process—I suspect because it thought that the hearing
officer would just rely upon the 2002 decision.

¶ 38.        
In my opinion, a case of this size and complexity, where each party is
fully represented by counsel, belongs in superior court where the judge is more
used to evaluating expert testimony of this intricacy and is skilled in
producing a good quality and complete decision.  The Legislature should
reconsider the unfettered choice the current statute allows and restrict larger
cases, like this, to court appeals.  While I would expect the
administrative appeal route to be initially less expensive and more efficient,
it is not ultimately so if the chance of reversal on appeal is very high. 
In any event, the amount in controversy is sufficiently high to warrant a
higher-cost adjudication process.

 


  
 
 
  
 
 
 Associate Justice
 
  











[1] 
The Iowa Curves were first published in 1935 and are based upon retirement
patterns of 176 classes of industrial equipment.  R. Winfrey, Iowa Eng’g
Experiment Station, Bulletin No. 125, Statistical Analyses of Industrial
Property Retirements 7-9 (1935).  As the state appraiser
explained in Town of Vernon:

 

Essentially this statistical study
asserts that depreciation is NOT straight lined, but curvilinear. This method
acknowledges a schedule of 30 to 40 year economic life estimates but
compensates for remaining functional utility (a factor other than age) by
leveling off after accelerated depreciation thereby avoiding excessive
depreciation by keeping the depreciation from going to zero.

174 Vt. at 475, 807 A.2d at 436. 





[2] 
Both parties used the Handy-Whitman Index for this purpose, and there was no
dispute about the replacement cost new for the equipment. 





[3] 
Justice Dooley has identified another issue—a procedural path for review of
local assessment determinations that is ill-suited to addressing the issues
presented in a case like this.  Post, ¶¶ 36-38.  





[4]
 Taxpayer has also relied on 3 V.S.A. § 812(a), which requires
“findings of fact and conclusions of law, separately stated.”

 





[5] 
Because the hearing officer concluded that taxpayer “was not able to overcome
the Town’s market and assessed value,” taxpayer has argued that the decision was
reached improperly based on a presumption.  The improper use of the
presumption of validity of the Town valuation has been another source of
frequent reversals of administrative valuation decisions.  E.g., Rutland
Country Club v. City of Rutland, 140 Vt. 142, 146, 436 A.2d 730, 732
(1981).  In this case, however, the statement to which the taxpayer points
is vague and does not necessarily invoke a presumption.  While it would
have been preferable for the hearing officer to state that taxpayer failed to meet
its burden of persuasion, I cannot say that the hearing officer improperly used
a presumption.