## Donald R. Sondergeld v. Town of Hubbardton

[556 A.2d 64]

No. 87-267

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed October 28, 1988

Motion for Reargument Denied December 7, 1988

*Donald R. Sondergeld, pro se,* West Hartford, Connecticut, Plaintiff-Appellant.

*Keyser, Crowley, Banse & Facey, P.C.,* Rutland, for Defendant-Appellee.

**Dooley, J.** Taxpayers* appeal from a decision of the Vermont State Board of Property Tax Appraisers setting the value of their land on Lake Beebe in Hubbardton for 1986. The Hubbardton Board of Civil Authority had reduced the listers' valuation from $39,000 to $36,000, and although on appeal the State Board made a further reduction to $30,000, taxpayers appealed to this Court. We affirm the decision of the State Board.

Taxpayers' property consists of a house on about one-half acre of land, with 150 feet of lake frontage. Much of taxpayers' argument involves the tax treatment of property fronting on other lakes in Hubbardton. While there are four lakes with area in Hubbardton, only Lake Beebe lies wholly within its borders. Hubbardton shares Lake Hortonia and Echo Lake with Sudbury and Lake Bomoseen with Castleton. Lake Beebe, at 100 acres, is

---

\* The land in question is owned by Donald and Mary Sondergeld, and the appeal to the Board was taken by both taxpayers. The appeal to this Court was taken only in the name of Donald Sondergeld. For purposes of the opinion, we assume he was acting for his wife Mary.

about twice the size of Echo but is smaller than either Bomoseen or Hortonia.

The listers, and the Board on appeal, began the task of establishing initial valuation with a schedule prepared jointly by the listers and the State Division of Property Valuation and Review, which had earlier assisted the Town with its reappraisal. The schedule set per-foot lakefront values and grade ratings, with 5 as an "average" rating. Each successive rating step above 5 produced a 10% higher valuation and each step below 5 a 10% lower valuation, all based on an actual land sales analysis. For values in Hubbardton, the standard rating of 5 indicated a value of $200 per lakefront foot on Lake Beebe, $250 on Bomoseen, and $140 on Hortonia. The listers assigned the taxpayers' property an above-average rating, a 7, based on the jointly-established table, but the Board lowered this rating of taxpayers' property to a 5, thereby reducing the assessed valuation from $36,000 to $30,000. Taxpayers argued that the proper valuation should have been $18,000 and pursued the instant appeal.

The touchstone for property tax valuations is fair market value, as mandated in 32 V.S.A. § 3481. *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 378, 488 A.2d 766, 767-68 (1985). While the most persuasive method of appraising residential property in Vermont is to establish fair market value through bona fide sale transactions, *id.* at 378-79, 488 A.2d at 768, our statute does not prescribe the method nor limit the manner in which evidence of fair market value may be presented to the Board. See *Re Montpelier & Barre R.R.*, 135 Vt. 102, 105, 369 A.2d 1379, 1381 (1977). The Town had the initial burden in this de novo proceeding to produce evidence of fair market value. *Schweizer v. Town of Pomfret*, 134 Vt. 436, 438, 365 A.2d 134, 135 (1976). It met this burden of production through evidence that the proper per-foot valuation for Lake Beebe was $200 per foot, based on schedules produced by the State, and modified by the Town, showing per-foot frontage values for Lake Beebe and two other lakes with shoreline in Hubbardton, Lake Bomoseen and Lake Hortonia. The State figures were based on sales and thereby reflected appraised valuation, within the meaning of 32 V.S.A. § 3481(1), which mandates a fair market value approach.

Taxpayers attacked the valuation differences between properties on different lakes but did not contest the actual sales which served as the underlying basis for the initial State valuations, and

did not introduce evidence that comparable lakefront lots on Lake Beebe had sold for less than the schedules indicated. Rather they sought to demonstrate through mathematical analysis of State figures for the other lakes with shoreline in Hubbardton that the figures for Lake Beebe were excessively high in relation to the other lakes. Without referring to the specific sales which served as the basis for the State figures, taxpayers surmised that the State failed to use weighted averages in setting the per-foot values on the three lakes. Mr. Sondergeld concluded his analysis with the comment, "[t]hat's what my stomach tells me was behind the state figures . . . I think they gave Hubbardton swamp basis market value for Bomoseen and prime land property value for Beebe . . . ." In their brief on appeal, taxpayers argue that "[a]ll other things being equal, it is reasonable to expect property on a large lake to be more valuable than similar property on a small pond. The surface area of Beebe Pond is only 100 acres, whereas Lake Hortonia is 449 acres, and Lake Bomoseen is 2,360 acres."

The taxpayer's speculation may or may not state a generally true principle in Vermont, but it is no substitute for evidence in a specific case. Once the taxing authority has met its burden to produce evidence of initial valuation, the taxpayer retains the burden of persuasion as to contested issues under 32 V.S.A. § 4467. *Rutland Country Club, Inc.* v. *City of Rutland*, 140 Vt. 142, 146, 436 A.2d 730, 732 (1981); *New England Power Co.* v. *Town of Barnet*, 134 Vt. 498, 508, 367 A.2d 1363, 1369 (1976). The burden of proof is not met by simply impugning the Board's methods or questioning its understanding of assessment theory or technique. To prevail a taxpayer must show an arbitrary or unlawful valuation. See *In re Mallary*, 127 Vt. 412, 415, 250 A.2d 837, 839 (1969). Although state statutes vary considerably in detail, the basic underlying burden on appellants in tax cases is similar in other jurisdictions. See, e.g., *Rien* v. *Board of Equalization*, 190 Neb. 481, 484, 209 N.W.2d 144, 146 (1973); *In re Town of Sunapee*, 126 N.H. 214, 217, 489 A.2d 153, 155 (1985); *Pantasote Co.* v. *City of Passaic*, 100 N.J. 408, 413, 495 A.2d 1308, 1310 (1985).

Taxpayers argue that the Town did not justify the use of the sales-related figures provided by the State or provide the underlying evidence on the basis of which the figures were prepared. They state they were "frustrated in not being able to review the

statistics that were purportedly utilized." But taxpayers mistake the tasks of the parties and the Board. At the Board hearing, the Town explained how the figures were gathered by the State and how they were modified by the Town. Not only did taxpayers fail to object to this evidence below, but they themselves used the very same kind of evidence to justify their own case, and did not submit sales data of their own to cast doubt on the sales information underlying the joint Town-State table. Taxpayers' expert witness, Richard Marineau, based his testimony on an appraisal that was derived in part from area sales. But he did not testify as to any specific sales underlying his appraisal. He relied on what he concluded were proper per-foot values, just as the Town relied on its table of per-foot values. Marineau was quite clear in dialogue with a Board member that he did not attempt to establish actual sales figures for Lake Beebe:

> [Board member]: One question Mr. Marineau. Did you, sir, do any kind of a land sales analysis on Beebe Lake to determine what . . . .
>
> Marineau: No I did not.
>
> [Board member]: So you are not really familiar with Beebe Pond or Beebe Lake?
>
> Marineau: I've . . . .
>
> [Board member]: Professionally.
>
> Marineau: I'm familiar to the extend [sic] that I've inspected the property with Mr. Sondergeld and looked at the frontage, but I did not [sic] analysis in terms of sales etc., on Beebe.

Nor can taxpayers complain that the Board used a value table as a starting point, rather than the more common methodology of considering individual properties comparable to the subject property and arriving at a valuation by comparing the subject property and the comparables. We have condemned the use of "sliding scale" methods of assessment that have nothing to do with fair market value. *Bloomer* v. *Town of Danby*, 135 Vt. 56, 57, 370 A.2d 194, 195 (1977). But no "sliding scale" was involved in this case. Here the State figures used as a starting point in appraising shoreline properties were based on actual sales informa-

tion. Taxpayers argue that the figures were incorrect because they appeared to defy their a priori notions of Lake Beebe values, in comparison with values on Lakes Bomoseen and Hortonia. But they do not argue that the method of translating comparable property sales into per-foot values was contrary to law.

■ Taxpayers further argue that the Board's conclusions are not supported by findings. This Court has often stated that decisions of the Board of Appraisers will not be affirmed if not supported by adequate findings. *Saufroy* v. *Town of Danville*, 148 Vt. 624, 625, 538 A.2d 168, 168-69 (1987); *Roy* v. *Town of Barnet*, 147 Vt. 551, 551-52, 522 A.2d 225, 226 (1986); *Schweizer* v. *Town of Pomfret*, 134 Vt. at 437, 365 A.2d at 135. The central question in all of these cases is whether the decision tells us "how that decision was reached." *Saufroy*, 148 Vt. at 625, 538 A.2d at 168 (citing *Roy*, 147 Vt. at 551-52, 522 A.2d at 226). In *Saufroy* the Board noted significant differences from a comparable property and proceeded without explanation to find the subject property identical to the comparable one. 148 Vt. at 625-26, 538 A.2d at 169. In *Roy* the Board simply repeated "the contentions and testimony of the parties and their witnesses" without specifying what the Board found. 147 Vt. at 552, 522 A.2d at 226. We noted the same defect in *Shetland Properties, Inc.* v. *Town of Poultney*, 145 Vt. 189, 192-93, 484 A.2d 929, 931-32 (1984) (no comparison of characteristics of taxpayer's property with comparable); *Corrette* v. *Town of St. Johnsbury*, 140 Vt. 315, 317, 437 A.2d 1112, 1113 (1981) (no "specific findings as to comparables"); *Rutland Country Club, Inc.* v. *City of Rutland*, 140 Vt. at 147, 436 A.2d at 732 ("[B]oard's findings were merely conclusory and provided no guidance for evaluating the land assessment procedures.").

In the present case the Board made very clear that it relied on valuation figures supplied by the State. We are not left in the dark about the Board's rationale, as in *Roy*, nor did the Board fail to state why a comparable property shed light on the proper value of the subject property, as in *Shetland Properties, Inc.* and *Saufroy*. If the Board's reference to the State-supplied figures was cursory, that brevity did not condemn its result. The burden of persuasion remains with the taxpayers, *Rutland Country Club, Inc.*, 140 Vt. at 146, 436 A.2d at 732, and the Board's findings need only make clear, however briefly, that the taxing authority met its burden of production, either by demonstrating that the

appraisal method substantially complied with legal requirements or by introducing some independent evidence supporting its valuation. While taxpayers argue that the Town produced no evidence to support the State figures, it was not the duty of the Town to carry the burden of persuasion, once it had produced reliable and admissible evidence meeting the requirements of 32 V.S.A. §§ 3481 and 4467.

Taxpayers below mounted their own attack on the $200 per-foot figure, using mathematical theories grounded in Mr. Sondergeld's expertise as an insurance actuary. Taxpayers relied principally on assumptions about comparative prices for lakefront land in Vermont, using a model that assumed certain market dynamics for large and small lakes, and further assumed that Lake Beebe conformed to that model. The Board was free to weigh taxpayers' theories more heavily than the Town's concrete, if cursory, evidence to the contrary if it so chose, but we cannot say that it abused its discretion in declining to do so.

We have long held that administrative agency actions are deemed presumptively correct. *Department of Taxes* v. *Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294, 415 A.2d 216, 218 (1980); *In re Young*, 134 Vt. 569, 570, 367 A.2d 665, 666 (1976); *International Ass'n of Firefighters Local #2287* v. *City of Montpelier*, 133 Vt. 175, 178, 332 A.2d 795, 797 (1975). And where warranted by the evidence, an administrative board's findings are conclusively binding on this Court. *In re Agency of Admin., State Buildings Div.*, 141 Vt. 68, 74, 444 A.2d 1349, 1352 (1982); see *Ladeau* v. *Department of Employment Sec.*, 134 Vt. 387, 359 A.2d 648 (1976); *St. Francis* v. *Department of Social Welfare*, 134 Vt. 344, 360 A.2d 94 (1976); see also *Kittery Elec. Light Co.* v. *Assessors of Town of Kittery*, 219 A.2d 728, 744 (Me. 1966); *Pantasote Co.*, 100 N.J. at 412, 495 A.2d at 1310.

Finally, taxpayers attack the Board's use of a sale on Lake Beebe in November, 1986, some seven months after April 1, 1986, the grand list assessment date reflecting a $300 per-foot lakefront value. There was no error in considering this sale. The purpose of evidence about comparable sales is to establish a strong factual predicate for appraising the subject property. Comparable sales will almost never occur on the assessment date itself, and therefore sales reasonably close in time are considered relevant. Taxpayers have not suggested why a sale shortly after the focal date should be less relevant than one shortly before it. In both cases

some extrapolation will be needed, but which property the Board or the Court considers in reaching its decision is an evidentiary question which rests solely within the trier's discretion. *Villeneuve* v. *Town of Waterville*, 141 Vt. 154, 157, 446 A.2d 358, 359-60 (1982).

*Affirmed.*