## Herschel Elliott v. Town of Barnard

[571 A.2d 653]

No. 86-532

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned

Opinion Filed December 15, 1989

*Case and Cole-Levesque,* Bethel, for Plaintiff-Appellant.

*Plante, Richards, Hanley & Gerety, P.C.,* White River Junction, for Defendant-Appellee.

**Dooley, J.** Taxpayer appeals from a decision of the State Board of Appraisers, which reduced the listed value of his property in Barnard. Taxpayer contends that the reduction was inadequate and that the Board failed to further reduce the appraised valuation by the appropriate Town-wide ratio under 32 V.S.A. § 4467. We affirm.

The property consists of 115 acres of land with a dwelling and outbuildings in the Chateauguay section of the Town, which tax-

payer characterizes as "near wilderness." It is served by a class III road and, closer to the dwelling, by a quarter-mile of class IV town road. There is neither electricity nor telephone service, with the nearest utility poles some two and one-half miles away.

The listers arrived at their initial valuation using the Vermont State Cost Approach, a schedule evaluating specific characteristics of the land and improvements according to prescribed criteria, and what the Board referred to as a "sales curve," a schedule of the Town's per-acre land values based on past sales within categories defined by total acreage. The parties agree that the initial values arrived at by this methodology are averages and therefore are not site-specific and are subject to adjustment on the basis of seven criteria to be applied to particular properties—utilities, roads, access, topography, view, drainage, and neighborhood. The listers rated the subject property as average for all seven factors and set its value at $60,145 for land and $29,055 for buildings, for a total value of $89,200. The Board of Civil Authority affirmed the listers' valuation.

The State Board, on taxpayer's appeal, disagreed with the Town's decision that the land should be graded as average in all respects. It downgraded the property on the topography factor because of its steepness, and on the utilities criterion, since the property was not served by utilities. It lowered the per-acre value from $523 to $410, for a total land value of $47,150. It also made reductions in the valuation of the buildings because of the lack of a usable bathroom, water and sewer service, and because of additional depreciation to the main house. It reduced the value of the barn because it found that the barn contributed little to the overall property value.

On appeal, taxpayer contests the Board's determination of fair market value and its failure to reduce that valuation to reflect the appropriate ratio of fair market values to listed values in accordance with 32 V.S.A. § 4467. The taxpayer does not contest the Board's determination of the fair market value of the buildings.

On the issue of fair market value, the taxpayer has three arguments: (1) the Town misgraded the property as average in all respects; (2) the Board ignored the evidence of the "compara-

bles"; and (3) once the taxpayer overcame the presumption of validity, the only evidence of value was that offered by the taxpayer, and the Board erred in rejecting it.

The first argument contests the listers' actions but ignores the fact that the Board corrected the listers' error. Under the Vermont State Cost Approach, the listers start with a single per-acre value for properties of similar size to that of the taxpayer and reduce or increase the value based on the ratings assigned to the adjustment criteria. The evidence shows that the listers rated taxpayer's property as average on all adjustment criteria and, as a result, used the general per-acre value for the property. The testimony is unclear as to why the listers found that no adjustments were relevant. Taxpayer interprets the testimony as showing that the listers always find larger parcels to be average on all adjustment factors and that this practice discriminates against lower value parcels in less desirable areas of the Town. The Town interprets the testimony as showing that the listers found that some adjustments needed to be made under the criteria, but their impact "cancelled" so the listers recorded all factors as average.

While taxpayer's interpretation turns grading errors into systematic discrimination, we believe that the Board's action in adjusting the value down because of lack of utilities and poor topography responded to the argument. It reduced the fair market value of the land from $60,145 (set by the Board of Civil Authority) to $47,150—a reduction in per-acre value from $523 to $410. While this did not provide the full adjustment urged by taxpayer, it is clear that the Board evaluated each adjustment factor and based its refusal to make further adjustments on the evidence before it as well as its view of the land.[1] There is no

---

[1] Taxpayer attacks the lack of specificity in the findings on these adjustments, arguing that the Board failed to make a "clear statement" of what was decided and why the decision was reached. See *Roy v. Town of Barnet*, 147 Vt. 551, 551–52, 522 A.2d 225, 226 (1986). We reaffirm the principle but emphasize that, carried to extremes, the principle cannot be met by any findings. There must be a limit to the degree of specificity required. Here, a statement that the property is average with respect to factors such as view and drainage is sufficient.

error in the use of the adjustment factors.[2]

■ Taxpayer's second argument on fair market value is that the Board failed to consider evidence of the fair market value of comparable properties offered by taxpayer. It is clear from the evidence that there were serious deficiencies in the comparables offered by the taxpayer. In each case, the value was based on a sale that occurred well before the listing date for taxpayer's property—in three of the four cases, the sale date was roughly three years earlier. One of the properties was landlocked, and the circumstances surrounding the sale of the others made it questionable whether the sale price reflected fair market value. Although there were differences between the "comparables" and the taxpayer's property, there was no evidence about the differences and their effect on value. Indeed, the taxpayer testified that the properties "were not truly comparable" and his property was "unique." There was no error in not using the properties offered by the taxpayer as evidence of fair market value. See *Haystack Property Owners Assoc. v. Town of Wilmington*, 151 Vt. 47, 49, 556 A.2d 110, 111 (1989) (not improper to fail to mention comparables where "no significant evidence of comparables").

■ The third argument is that the state of the record demanded that the Board accept the taxpayer's estimate of the value of the land because it was the only evidence once the presumption of validity was gone. We agree with the taxpayer that the presumption of validity of an appraisal disappears once the taxpayer introduces evidence showing that the appraisal exceeded fair market value. See, e.g., *City of Barre v. Town of Orange*, 152 Vt. 442, 444, 566 A.2d 951, 952 (1989). Also, we agree that the evidence showing the need for the application of adjustment factors "burst the bubble." See, e.g., *Littlefield v.*

---

[2] The taxpayer also argues that the listers were required to personally examine the property under 32 V.S.A. § 4041. Since the Board must proceed de novo, and the Board discharged its responsibility to inspect the property, the listers' failure, if any, is now irrelevant. See 32 V.S.A. § 4467. This is not a case governed by 32 V.S.A. § 4404(c) which contains a specific remedy when the board of civil authority fails to inspect the property. See *Villeneuve v. Town of Cambridge*, 148 Vt. 15, 527 A.2d 659 (1987).

*Town of Brighton*, 151 Vt. 600, 602, 563 A.2d 998, 1000 (1989). We cannot agree, however, that the only evidence left here was taxpayer's estimate of the value of the property.

■ The Town used a standard method of appraisal, based on sales prices of properties within the Town, and placed its methodology, as well as the results in this case, before the Board. This is sufficient evidence of the fair market value of taxpayer's property to support both the Town's valuation and the methodology used to reach it. This case is similar to, and is controlled by, *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 556 A.2d 64 (1988), where the Town calculated the value of shorefront property based on state schedules of per-foot frontage values that were, in turn, based on sales prices of lakefront properties. We found the Town's methodology to be a sufficient basis for the Board to adopt its determination of fair market value. *Id.* at 568–70, 556 A.2d at 66–67. We recently reaffirmed the *Sondergeld* holding in *Gionet v. Town of Goshen*, 152 Vt. 451, 566 A.2d 1349 (1989), a case virtually identical to this one. As in this case, the Board in *Gionet* used the Town's methodology but found that the grading done under the adjustment criteria was partially erroneous. *Id.* at 454, 566 A.2d at 1350. There was no error in the instant case.

Finally, taxpayer argues that the Board failed to reduce the fair market value to listed value by applying an appropriate equalization formula under 32 V.S.A. § 4467. The Town's position at the Board hearing was that the Town had gone through a complete reappraisal for 1986 and, as a result, listed values had been brought up to fair market value in all cases. In other words, the Town's evidence was that the equalization ratio was 100%.

■■ The taxpayer had the burden of persuasion on all contested issues. See *Rutland Country Club, Inc. v. City of Rutland*, 140 Vt. 142, 146, 436 A.2d 730, 732 (1981). He failed to offer evidence of the ratio of listed values to fair market values for comparable properties or, since he claimed the property was "unique," evidence of the Town-wide equalization ratio. See *Kachadorian v. Town of Woodstock*, 144 Vt. 348, 352, 477 A.2d 965, 968 (1984). Thus, the Board had adequate justification for ac-

cepting the Town's position that the listed value equaled the fair market value.

*Affirmed.*