NO. 07-04-0005-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 3, 2005
_____

DEVON ENERGY PRODUCTION, L.P., and
PENNZENERGY EXPLORATION and PRODUCTION, L.L.C.

Appellants

v.

HOCKLEY COUNTY APPRAISAL DISTRICT,

Appellee
_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 00-01-17,897; HON. HAROLD PHELAN, PRESIDING
_____

***OPINION***
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Devon Energy Production Company, L.P. and PennzEnergy Exploration and

Production, L.L.C. (collectively referred to as Devon) appeal from a judgment denying them

relief against the Hockley County Appraisal District (Hockley District).[1]  Devon sued the

Hockley District contending that the latter's appraisal of the former's working interest in an

oil and gas reservoir was excessive and that it included within its appraisal property outside

_____

[1]Devon's predecessor-in-interest was PennzEnergy.

county boundaries. Because of these purported errors, the Hockley District's appraisals over the years were void or otherwise unenforceable, Devon concluded. Trial was had, and judgment was entered denying Devon relief. The two issues before us concern the valuation of minerals by the Hockley District for ad valorem taxation and the trial court's refusal to award Devon attorney's fees. We reverse the judgment of the trial court.

### *Background*

Devon owned a working interest in an oil and gas lease, the M. G. Gordon, covering approximately 731 surface acres of land. Approximately 84% of the surface acreage (or 612.7 acres) lay in Hockley County, while 16% (or 118.3 acres) lay in Terry County. Furthermore, minerals were being produced from a reservoir encompassed by the lease and known as the Clearfork formation. The latter also crossed the Terry and Hockley County lines.

As previously mentioned, the dispute before us arose when the Hockley District attempted to value the minerals for purposes of ad valorem taxation. It did so by first valuing the entire Clearfork reserve included in the M.G. Gordon lease, irrespective of the county in which it lay. Next, it calculated the percentage of surface acres in the lease which were located within the boundaries of Hockley County. That percentage (84%) was then multiplied by the entire value of the Clearfork reserve previously derived, and the resulting sum purported to form the fair market value of the property upon which Devon's ad valorem tax liability was based.

Devon questioned the manner of appraisal for, among other reasons, the calculation allegedly encompassed property outside county borders. That is, the evidence revealed that the boundaries of the Clearfork formation were not co-terminous with those of the M.G.

Gordon lease. The former covered a smaller area than did the latter. More importantly, about 50% of the reserve actually was located in both Hockley and Terry Counties. Given this, the Hockley District could assess only 50% of the reservoir for tax purposes, so Devon argued.

The record further disclosed that the Terry County Appraisal District (Terry District) also valued the Clearfork reservoir for ad valorem taxation. It too calculated the fair market value of the entire Clearfork mineral interest in dispute. But, because only 50% of the formation lay within the boundaries of Terry County, it only assessed 50% of the whole for tax purposes.

So too does the record illustrate that upon combining the assessments derived by the Hockley District with that of the Terry District, the mineral formation at issue was effectively valued (for tax purposes) at 134% of its fair market value. Indeed, the Hockley District so stipulated.[2] And, according to Devon, such an excessive valuation was prohibited by the Texas Constitution.

### Issue One – Validity of Assessment

Devon initially challenges the assessment of the Hockley District by arguing that it fails to pass constitutional muster and because it included property outside Hockley County. We sustain the latter argument, and since it is dispositive of the appeal, we need not consider the former.

---

[2]The stipulation read: "The different appraisal methodologies used by Hockley County Appraisal District and the Terry County Appraisal District result in the appraisal of Plaintiff's property at approximately one hundred thirty-four percent (134%) of its market value."

*Applicable Law*

The Texas Constitution provides:

> No property of any kind in this State shall ever be assessed for ad valorem taxes at a greater value than its fair cash market value nor shall the Board of Equalization of any governmental or political subdivision or taxing district within this State fix the value of any property for tax purposes at more than its fair cash market value . . . .

TEX. CONST. art. VIII, §20.  Article VIII, § 11 of the same document further specifies that "[a]ll property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated . . . ."  *Id.* art. VIII, § 11.

Next, to perform the duties of assessing property for ad valorem taxation, the legislature created appraisal districts.  Each county has one, TEX. TAX CODE ANN. §6.01(a) (Vernon 2001), and its boundaries generally are co-terminous with those of the county.[3] *Id.* §6.02(a).  So too is each district statutorily charged with the responsibility of "appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district."  *Id.* §6.01(b).  Statute further dictates that "[r]eal property is taxable by a taxing unit if located in the unit on January 1 . . .," *id.* §21.01, and the burden lies with the unit to prove situs.  *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985) (holding that "a taxing authority must prove its entitlement to collect taxes by showing that the property it seeks to assess has a taxable situs within the limits of its boundaries").

From the aforementioned statutes, one encounters a truism applicable to this case. It pertains to the situs of the property undergoing assessment and holds that the appraisal

---

[3]To the extent that exceptions to this rule exist, no one argues that such exceptions were in play here.

4

district may assess for taxation only that property within its district. Indeed, if 1) a district's boundaries are co-terminous with those of the county and 2) a district is responsible for assessing property within the district, then one must logically conclude that its assessment cannot include property outside the county.[4]

*Application of Law*

The property undergoing appraisal here by the Hockley District consists of minerals beneath a particular tract of land. Yet, the borders of the zone wherein the minerals lay are not co-terminous with those of the surface acres comprising the M.G. Gordon lease. Much like the chocolate in a marble cake, the minerals lay in specific areas within the whole. So too does the formation in which they are found traverse county lines. Given this, the Hockley District was prohibited from including within its assessment property laying outside Hockley County borders. Yet, the appraisal methodology utilized to determine the fair market value of the Clearfork reservoir within Hockley County did not comport with this restriction.

Instead of using the geographic borders of the Clearfork reservoir as determinative, it adopted the surface acreage encompassed in the Gordon lease and within Hockley County as the relevant yardstick. Yet, no one disputes that the surface acreage and the sub-surface acreage containing the minerals were not the same here. Nor does anyone deny that 84% of the surface acreage had a situs in Hockley County while only 50% of the

---

[4]We acknowledge that the boundaries of one appraisal district may extend into those of another if a taxing unit covered by the district itself has boundaries laying in two or more counties. TEX. TAX CODE ANN. § 6.02(b) (Vernon 2001). Yet, again, no one argues that the facts of record permit application of §6.02(b).

Clearfork reservoir lay within that county. So, as can be readily seen, the size of one was not the true measure of the other. And, when the greater was used as the measure of the smaller, than the difference had to come from somewhere. Logic permits us only to conclude that here, the difference came from that portion of the reservoir located within Terry County. Simply put, the Hockley District effectively incorporated 34% of the formation located in Terry County into its assessment.

In sum, if only 50% of the mineral formation being taxed lay within Hockley County, then the taxing units for whom the Hockley District valued the property could only tax 50% of the formation. And, because they could only tax 50% of the formation, the Hockley District could only assess 50% of the formation for tax purposes. Any creative appraisal methodology that ignored this limitation was and remains unacceptable. To paraphrase the words of Pink Floyd in its song "Money," appraisal districts assessing property crossing county lines are entitled to "share it fairly but don't take a slice of [the other's] pie." Moreover, that it may be difficult to accurately determine the actual size and location of the underground property is no reason to ignore restrictions imposed by law. After all, the taxing unit seeking to tax the property has the burden to establish that the realty lay within the unit's border. *Oake v. Collin County, supra*. If it cannot, then it cannot lawfully tax the realty. And, if it cannot lawfully tax the realty, then the appraisal district has no authority to incorporate the realty into its assessment.[5] Thus, we sustain the issue.

---

[5]No one argues that the property rights accompanying the use of the surface (*e.g.* right to enter the land and explore) were included in the valuation of the property at issue. Indeed, while the language used by the appraisers to describe what they were valuing differed, all began by determining a value for the remaining recoverable reserves calculated through a discounted cash flow analysis. Consequently, our holding is restricted to the facts before us. Finally, the mode of valuing properties such as those involved at bar may be a matter ripe for legislative attention.

***Issue Two – Attorney's Fees***

Through its remaining issue, Devon contends that the trial court erred in failing to award it attorney's fees.  The trial court did not consider awarding Devon attorney's fees because it was not a prevailing party.  This is no longer true, given our opinion in this cause.  Therefore, we also remand this topic for reconsideration by the trial court.  *See Tex-Air Helicopters, Inc. v. Appraisal Review Board of Galveston County,* 940 S.W.2d 299, 304 (Tex. App.–Houston [14th Dist.] 1997), *aff'd,* 970 S.W.2d 530 (Tex. 1998) (refusing to award attorney's fees under the Tax Code because the trial court mistakenly held that the claimant was not a prevailing party and had yet to have the opportunity to reconsider the issue once it was determined that the claimant was actually a prevailing party).

The Hockley District having assessed the value of the realty at issue in violation of the law, we reverse the judgment of the trial court and remand the cause.


Brian Quinn
Chief Justice