2013 VT 49

## Vanderminden, A Family LTD Partnership v. Town of Wells

[75 A.3d 598]

No. 12-092

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed June 28, 2013

*Joseph A. DeBonis* of *DeBonis, Wright & Carris, P.C.*, Poultney, for Plaintiff-Appellant.

*John C. Thrasher* of *Ceglowski & Thrasher, LLC*, Rupert, for Defendant-Appellee.

¶ 1. **Dooley, J.** Taxpayer, Vanderminden, a Family Limited Partnership, owns a contiguous piece of property located in the adjoining Towns of Poultney and Wells. This appeal concerns the portion of the property in the. Town of Wells. The state appraiser affirmed the Town's valuation of this parcel at $122,000. On appeal, taxpayer argues that the state appraiser erred in: (1) failing to provide a sufficient explanation for the decision and accepting the Town's valuation without sufficient supporting evidence; (2) assessing the Wells and Poultney properties as a single parcel and valuing the Wells portion as if its best use was for a seasonal dwelling; and (3) not accepting taxpayer's evidence that the property is assessed above fair market value. We reverse and remand.

¶ 2. Taxpayer's aggregate property is 1.49 acres with 715 feet of lake frontage on Lake St. Catherine. The property is improved with a seasonal camp, a garage, water, and a sewage system. All of the improvements are located on the Poultney

portion. The Wells portion is .09 acres[1] including 125 feet of lake frontage. It is shown on the Town of Wells tax map as a roughly triangular small piece of land that sticks out into the lake. The maximum depth of the land is fifty feet, and it tapers to zero feet on each side as it crosses the town boundary.[2] Apparently, this piece is reachable by land only by proceeding over the Poultney portion of taxpayer's land.[3]

¶ 3. For 2011, the Town of Wells assessed the Wells portion of the property at $130,200. Taxpayer grieved that assessment, and the listers adjusted the value to $122,000 to reflect that the overall property had 715 feet of lake frontage. Apparently, the Town's land schedule assigns a per-foot value for lake frontage that decreases as the amount of overall lake frontage increases.[4] Following taxpayer's appeal, the board of civil authority affirmed the listers' valuation. Taxpayer then appealed to the state appraiser.

¶ 4. At the hearing, three listers represented the Town. They put the listers' card in evidence and explained that the parcel was assessed by using a per-foot value for lake frontage. One of the listers explained that this amount was then adjusted with a neighborhood multiplier of 2.5 and grade adjustment of 0.5. The amount was also adjusted to reflect the depth of the property. The printed part of the card said that that adjustment reflected an "effective depth" of fifty feet, but there is a handwritten addition

---

[1] The state appraiser's decision states that the property is 0.14 acres, but this appears to be an error. At the hearing, the Town testified that the property is 0.09 acres. Further, the Wells listers' card reports that the property is 0.09 acres.

[2] The state appraiser's decision states that the average depth is thirty feet, but this measurement information is not entirely accurate in view of the shape of the piece.

[3] Taxpayer testified that "[t]here is no access from the road to this parcel, nor is there a right of way to it." The state appraiser made a *Krupp* finding reflecting this testimony, but added "we were able to drive to the parcel over what appeared to be a right of way past other residences." See *Krupp v. Krupp*, 126 Vt. 511, 514-15, 236 A.2d 653, 655-56 (1967) (explaining that recitations of evidence are not findings of fact and are "immaterial and are not for consideration"). We do not read this as disputing that he had to cross taxpayer's land in Poultney to reach the land in Wells.

[4] The Town submitted a supplemental printed case, which contains a series of documents called the "Wells Lake Front Land Schedule." One of the documents shows a table displaying the value per front foot, for different lengths of frontage, with the value declining as the increments of frontage increase. As explained, *infra*, this schedule was not in evidence in this case.

that says depth "reduced to 30' for value purpose."[5] The Town did not, however, introduce the land schedule, identify the starting per foot land value, or reproduce the calculation that led to its ultimate result.

¶ 5. Taxpayer presented evidence from an expert, who testified that the Wells parcel would not meet state soil or setback requirements for a septic system. In a letter of opinion, the expert also stated that the property would not meet the state's minimum setback requirements for the construction of a building that requires potable water and a wastewater disposal system. Taxpayer also introduced evidence of the sales of three properties in Poultney that had lake frontage as evidence of the fair market value of the Wells property. Taxpayer introduced the listers' card for the Poultney portion of the property, and a calculation of the value of the Wells land as if it was located in Poultney. Taxpayer testified that in his opinion the highest and best use for the Wells portion of the property is as a parking lot and that its value is $30,000.

¶ 6. The Town challenged the three sales in Poultney offered by taxpayer, arguing that the sales were not indicative of the fair market value of taxpayer's land because the properties were in inferior neighborhoods and did not offer the same lake view. The Town also argued that the Wells portion could not be separated from the whole for assessment purposes, but should be valued as part of the larger parcel of land. The Town explained that it was not valuing the Wells portion as a separately developable piece of property but as additional lake frontage on a developed lot. The Town explained that certain attributes of the property were considered in the valuation but that there was no discount applied to the property for its failure to meet building or septic setback requirements.

¶ 7. The state appraiser conducted a site visit and issued a written decision. The appraiser rejected taxpayer's assertion that the best use for the property was as a parking lot. From the site visit, the appraiser observed that the land has a deck and sitting area and concluded that the land had greater value than just as a parking lot since it supported the land in Wells. The appraiser

---

[5] Again, the significance of this adjustment is shown on the documents the Town asserts comprise the lakefront land schedule. According to one of the documents an effective depth of thirty feet — the smallest number in the table — produces a multiplier of 0.68.

did not accept the Poultney sales submitted by taxpayer as indicative of the fair market value of the Wells property, concluding that two sales from 2006 were outdated and that the remaining one did "not support the contention that the Subject has been assessed improperly." The appraiser concluded that taxpayer had not met its burden of proving that the Town's valuation was incorrect and affirmed the listed value of $122,000. Taxpayer appealed that decision to this Court.

¶ 8. There are two aspects to this case: the procedural and the substantive. We begin with the procedural component. First, we summarize the shifting burdens that we have applied in many cases. When a taxpayer grieves an assessment to the state appraiser, there is a presumption that the town's assessment is valid. *City of Barre v. Town of Orange*, 152 Vt. 442, 444, 566 A.2d 951, 952 (1989). This is a bursting bubble presumption; if the taxpayer presents any evidence that his property was appraised above fair market value, then the presumption disappears, and "it is up to the town to introduce evidence that justifies its appraisal." *Adams v. Town of West Haven*, 147 Vt. 618, 619-20, 523 A.2d 1244, 1245 (1987). Once the presumption disappears, the town is required to show either "that it substantially complied with the relevant statutory and constitutional requirements" or that its valuation was supported by independent evidence of fair market value. *Littlefield v. Town of Brighton*, 151 Vt. 600, 602, 563 A.2d 998, 1000 (1989). The ultimate burden of persuading the court that the town's appraisal is incorrect "remains with the taxpayer." *Adams*, 147 Vt. at 620 n.*, 523 A.2d at 1245 n.*.

¶ 9. On appeal, we accord deference to decisions of the state appraiser and "will set aside the state appraiser's findings of fact only when clearly erroneous." *Barnett v. Town of Wolcott*, 2009 VT 32, ¶ 5, 185 Vt. 627, 970 A.2d 1281 (mem.). Where the state appraiser's valuation is supported by some evidence from the record, "the appellant bears the burden of demonstrating that the exercise of discretion was clearly erroneous." *Garilli v. Town of Waitsfield*, 2008 VT 91, ¶ 9, 184 Vt. 594, 958 A.2d 1188 (mem.) (quotation omitted).

¶ 10. In this case, we conclude that the appraiser's findings are not supported because of an error in the Town's justification

for its appraisal.[6] Taxpayer presented sufficient evidence to rebut the Town's initial presumption of the validity of the assessment.[7] Following the disappearance of the initial presumption, the Town could support its appraisal by demonstrating that the appraisal was derived from a schedule that was developed to grade and determine the fair market value of property. See *Elliott v. Town of Barnard*, 153 Vt. 306, 311, 571 A.2d 653, 656 (1989). In this proceeding, the listers introduced their listing card that showed that the appraisal was based on a number of factors that apparently were part of a land schedule. The listers' testimony suggested that this was a special schedule for lakefront property. However, the listers failed to introduce the schedule[8] so the methodology for using the adjustment factors was not in evidence,

---

[6] The taxpayer has labeled this issue as a failure of the state appraiser to adequately explain his reasoning so this Court can determine the basis for the decision. We have recast it in the text because the state appraiser could not explain the decision without the evidence of the Wells land schedule.

[7] The Town argues in its brief that taxpayer's evidence "was properly considered by the state appraiser and he found that it was not sufficient to overcome the presumption of the validity of the town's assessment." Although we acknowledge that the state appraiser's decision was ambiguous on this point, a decision that taxpayer did not provide sufficient evidence to overcome the presumption of validity of the Town's assessment would be clearly wrong. Even if the state appraiser did not credit them, evidence of the three alleged comparable properties was sufficient to overcome the presumption. See *Kruse v. Town of Westford*, 145 Vt. 368, 371-72, 488 A.2d 770, 772 (1985) (explaining that presumption is overcome when taxpayer introduces evidence tending to show property appraised above fair market value as evidenced by valuations of comparable properties).

[8] The Town claims that it did introduce the schedule, and the state appraiser accepted it, but the decision fails to reflect the existence of this evidence. Thus, the Town claims that the state appraiser was aware of the schedule and taxpayer had it in his possession. The Town's argument is based on its claim that the land schedule was introduced into evidence in a different appeal heard the same day, involving a different taxpayer, as Exhibit T-6, and the transcript of this case shows the admission of an Exhibit T-6, which the Town claims must have been the land schedule. The record does not support the Town's theory. Exhibit T-6 entered in this case is described in the transcript as a document entitled "what is a parcel." A document, entitled "What is a Parcel?" and marked as Exhibit T-6, is included in the file from the Property Valuation and Review Division. The Town also notes the transcript contains a statement from one of the listers: "And then I gave you this morning the definition of —," to which the state appraiser interrupts, "I marked — that's marked." Apparently, the Town believes this is an alternative theory of how the schedule was admitted. The interchange does not specify what the lister was referring to as a "definition"; the reference may refer to the document defining a parcel, but is not descriptive of a land schedule.

and there was no showing how the listers' value was reached. There was not sufficient evidence to meet the Town's burden, and the appraiser could not rely upon the listers' appraisal. Cf. *id.* (concluding town's evidence sufficient because town put its methodology and calculations for taxpayer's case in evidence). Thus, there is no support for the appraiser's decision setting the fair market value at the amount of the Town's appraisal. We must reverse the state appraiser's decision for this error. But before doing so, we turn to the substantive aspect of the case.

¶ 11. On the substance of the state appraiser's decision, taxpayer first argues that the state appraiser erred in treating taxpayer's property as one parcel although it lies in two towns. According to taxpayer, the state appraiser's conclusion that the highest and best use of the property is as a seasonal home is incorrect because the property in Wells cannot support such a use. Rather than consider the Wells portion separately, the state appraiser found that the "entire property is a single parcel on a single deed." The state appraiser concluded that the Wells part of the property "is not a singular entity[;] it is part of the whole." Taxpayer argues that this analysis is flawed because it is based on 32 V.S.A. § 4152(a)(3), which requires "all contiguous land in the same ownership" to be assessed as one parcel, but only where all the land is in one town. Taxpayer argues that the statute does not apply here where the land is in more than one town.

■ ■ ¶ 12. We acknowledge that the statute does not apply directly. Even before the specific rule in § 4152(a)(3), however, we recognized that in some instances contiguous parcels in common ownership should be treated as one. To determine whether contiguous land in common ownership should be treated as one parcel:

> All relevant factors must be considered in determining whether or not property should be assessed as a single parcel, including whether the property was conveyed in one deed, the character of the land and the purpose for which it is used, whether separately deeded tracts are contiguous, and whether the property currently functions as one tract for the owner.

*Neun v. Town of Roxbury,* 150 Vt. 242, 244, 552 A.2d 408, 410 (1988); see also *Bullis v. Town of Grand Isle,* 151 Vt. 503, 504, 561 A.2d 1359, 1360 (1989) (same). Under these factors, taxpayer's

entire property in this case is one parcel. It is covered in one deed, used for one common purpose, and functions as a single tract. We see no reason to treat the property differently.

¶ 13. We particularly do not see a reason to treat the property as two separate parcels simply because it is divided by a town boundary line. The fact that the land lies in two towns goes to taxing jurisdiction and not to the nature of the property. Taxpayer wants the part of the property in Wells to be treated as a separate parcel because, so treated, it has virtually no value. But that would be a fiction. Viewed as part of the larger property, as it is used, it clearly adds value to the whole and should be treated that way. Thus, we agree with the state appraiser and the Town of Wells on that point.[9]

¶ 14. But there is a clear consequence to this holding, and that brings us to the larger substantive argument of the taxpayer. Taxpayer argues that it presented credible evidence that its property was assessed at more than fair market value and that the state appraiser did not credit this evidence. Essentially, taxpayer's claim is that it is unfair for Poultney and Wells to use separate and conflicting appraisal formulas. We agree, at least in part.

¶ 15. Before we address the argument directly, we make two preliminary points. It is clear from the records we have observed in property tax appeals that there are many mass appraisal models in use in Vermont towns. As we observed in *City of Barre v. Town of Orange*, 138 Vt. 484, 486, 417 A.2d 939, 941 (1980), "many different methods exist for determining fair market value." See generally Int'l Ass'n of Assessing Officers, Standard on Mass Appraisal of Real Property 8-10 (2013), http://www.iaao.org/uploads/standardonmassappraisal.pdf. This point is particularly apparent from the record in this case. The Town of Poultney uses a model that places the primary value of a property containing a dwelling on the land under and immediately surrounding the

---

[9] Our agreement on this point does not mean that we agree that the valuation formula used by the Town of Wells is valid or that it was properly applied here. Although the land schedule is not in evidence, it appears that the Town of Wells uses the single-parcel determination to treat the Wells land as if it were part of a single parcel of unimproved land in the Town of Wells. We do not know the effect on the valuation if the Town of Wells had treated this hypothetical parcel as if it included a dwelling. See, *infra*, n.10.

dwelling.[10] Under the Poultney formula, much less of the value is based on the lake frontage. Under this formula, adding the land in the Town of Wells, as if it were in the Town of Poultney, would add little — according to taxpayer's evidence, $450 — to the overall fair market value.

¶ 16. The Town of Wells, when it is valuing unimproved land, places most of the value on the lake frontage. We do not know what the Town would do if the lakefront land also had a dwelling.[11] We do know, however, that if the Town of Wells's schedule were applied to taxpayer's land in the Town of Poultney, the value of that land would increase by more than five times if it were unimproved. The fact that it is improved should add even more value.

¶ 17. The result of Poultney using its appraisal formula for the land in its town, and Wells using its appraisal formula for the land in its town, appears to be that each town maximizes the taxable value of its share of the parcel. This result might be acceptable if this were only a dispute between towns. It may be unacceptable, however, if the result means that the combination of the two values on which the towns assess their taxes exceeds the fair market value of the property overall when viewed as one parcel.[12]

---

[10] Many towns use a land schedule that assigns a higher per acre value to a one- or two-acre housesite. See, e.g., *Bookstaver v. Town of Westminster*, 131 Vt. 133, 137, 300 A.2d 891, 894 (1973). The amount of land surrounding a dwelling and "reasonably necessary for the use of the dwelling as a home" is a housesite for purposes of the "Homestead Property Tax Income Sensitivity Adjustment" for income taxes if it is a portion of a homestead. 32 V.S.A. §§ 6061(11) (definition), 6066 (computation of adjustment). A homestead is a "principal dwelling" and "parcel of land surrounding the dwelling." *Id.* § 5401(7)(A). The appraiser is required to "determine a homestead and a housesite value if a homestead has been declared with respect to the property." *Id.* § 4467. The dwelling in Poultney in this case is a seasonal home and not a homestead.

[11] The Town of Wells could have the same policy as the Town of Poultney where there is a dwelling. We note that, in valuing taxpayer's land, the Town of Wells reduced the lakefront-per-foot valuation to account for the total lakefront footage of the parcel but made no adjustment because of the presence of the dwelling. It appears that the Town of Wells is considering the property as one parcel only partially.

[12] The situation here was described in a similar case from the Texas Court of Appeals, paraphrasing Pink Floyd: "appraisal districts assessing property crossing county lines are entitled to 'share it fairly but don't take a slice of [the other's] pie.'" *Devon Energy Prod., L.P. v. Hockley Cnty. Appraisal Dist.*, 178 S.W.3d 879,

Indeed, taxpayer's evidence strongly suggests that this unacceptable result is occurring here.

¶ 18. The second preliminary point is that the Legislature has not specified how to value land that is contiguous, and in common ownership, but lies in more than one town. Nor has the Division of Property Valuation and Review,[13] a division within the Department of Taxes, 3 V.S.A. § 2289(a), specified the methodology for such valuation. See 32 V.S.A. § 3401 (Director of Division to provide "printed instructions and directions" to town listers related to their duties); *id.* § 3411(5) (directing division to "provide technical assistance and instruction to the listers in a uniform appraisal system"). Nor has this Court provided guidance for appraisal in such circumstances.[14] In this case, there were two appeals of the Town of Wells appraisal, the one before us and an earlier appeal in 2006. In each case, the hearing officer acting as state appraiser urged the listers in Poultney and Wells to develop a joint fair market value. The hearing officer in 2006 observed "I do find the practice of valuing contiguous properties in two towns as unrelated properties troubling. If one was applying for a mortgage or considering selling you would not utilize this approach." There is no indication that the recommendation of the hearing officers was acted upon, probably because the analysis in the decisions allows each town to achieve its tax objectives without having to consider the overall impact of their joint actions on the taxpayer. There is little incentive for the towns to cooperate.

¶ 19. With these observations in mind, we return to the substantive issue before us. The core policy of our property tax

882-83 (Tex. Ct. App. 2005). In *Devon*, the county assessments together amounted to 134% of fair market value. *Id.* at 881.

[13] The Division publishes documents intended to assist listers, including a Listers Handbook. See Div. Prop. Valuation & Review, Listers Handbook (April 2008), www.state.vt.us/tax/pdf.word.excel/pvr/2008%20Listers%20Handbook_Restored.pdf. And, with the Secretary of State, a Handbook on Property Tax Assessment Appeals. See Office of Sec'y of State & Div. Prop. Valuation & Review, A Handbook on Property Tax Assessment Appeals (rev. 2009), www.sec.state.vt.us/municipal/tax_appeal_handbook_2007.pdf. Neither specifies how to appraise contiguous property in common ownership lying in more than one town.

[14] In *Ames v. Town of Danby*, 136 Vt. 78, 385 A.2d 1075 (1978), we considered the appraisal of land lying in three towns by one of the towns. The fact the land was in more than one town did not affect the decision, except we held that the taxpayer could testify to the appraisal of the land in the other towns by those towns as relevant to fair market value. *Id.* at 82, 385 A.2d at 1078-79.

system is that property is taxed based on its fair market value. Taxation based on fair market value "ensure[s] that no property owner pays more than his or her fair share of the tax burden." *Barnett*, 2009 VT 32, ¶ 4. This policy implements the proportional contribution clause in Chapter I, Article 9 of the Vermont Constitution. See *Town of Barnet v. Palazzi Corp.*, 135 Vt. 298, 302, 376 A.2d 24, 27 (1977) (equality and uniformity of taxation cannot occur without uniformity in basis of assessment of fair market value). As we held in *In re Property of One Church Street*, 152 Vt. 260, 267, 565 A.2d 1349, 1353 (1989), the mandate of the proportional contribution clause is that "a classification once established be applied equitably to all within the class." Under the Vermont system, all properties are in the same class with respect to valuation at fair market value.

■ ■ ¶ 20. We see no exception in this requirement because property lies in more than one town. Just as with land in one town, the value of the whole property must be equated with fair market value. In saying this, we recognize that the fair market value is affected by the location of the whole parcel, including the fact that it is in more than one town, each with its own governmental services, land use regulation, and tax rates. See *Wennar v. Town of Georgia*, 161 Vt. 632, 633, 641 A.2d 101, 102 (1994) (mem.) (noting that property value is affected by lakefront location). We also emphasize that this policy is not intended to impact town taxing autonomy other than in the determination of fair market value. The fair market value must be divided between the towns, and appraised value must reflect the second equalization step for each town. See *Alexander v. Town of Barton*, 152 Vt. 148, 153, 565 A.2d 1294, 1297 (1989) (on appeal, appraiser must determine fair market value and listed value of comparable properties to equalize assessments). Our only limitation is that the sum of the values attributable to the part of the parcel in each town cannot exceed the fair market value of the whole parcel.

■ ■ ¶ 21. The governing statute requires the state appraiser, or the superior court if the taxpayer has selected that appeal option, to determine the "correct valuation" of the property. We hold that the determination of the correct valuation for property in more than one town when valued as a single parcel includes both the fair market value of the property overall and of the portion in the town involved in the appeal. Cf. *Great Lakes Div.*

*of Nat'l Steel Corp. v. City of Ecorse*, 576 N.W.2d 667, 685-86 (Mich. Ct. App. 1998) (affirming decision of tax tribunal that integrated steel mill in two cities must be taxed at overall fair market value, with value apportioned between cities; tax tribunal held "[I]t is essential that the sum of the parts *do* equal the whole; . . . appraiser cannot correctly and accurately determine the true cash value of a property by appraising only half of a facility that is 'integrated' "). If the taxpayer presents evidence demonstrating that the value assigned to the portion of the property in the town involved in the appeal exceeds the difference between the overall fair market value and the value(s) used in the other town(s), the value for the town involved in the appeal must be reduced so that the overall parcel is not appraised above fair market value. To demonstrate the overall fair market value of the parcel, the parties may present traditional evidence of fair market value such as comparable sales. See *Ames*, 136 Vt. at 82, 385 A.2d at 1078-79 (explaining that comparable property values are relevant to fair market value). The weight to assign to taxpayer's evidence will be a matter for the factfinder. See *Boivin v. Town of Addison*, 2010 VT 67, ¶ 6, 188 Vt. 571, 5 A.3d 897 (mem.) (explaining that trial court has discretion to determine credibility and weight of evidence in tax appeal).

¶ 22. We recognize the complexity of this determination because it involves reverse equalization for the town(s) not involved in the appeal — that is deriving a fair market value from a town's appraised value. We also recognize that it arbitrarily requires the town involved in the appeal to bear the entire burden of ensuring that taxpayer is not being taxed on a parcel value above fair market value.[15] This arbitrariness should provide towns with parcels also lying in another town or towns to cooperate on appraisal of the parcel to produce a result that protects the taxpayer and treats each town involved fairly.

¶ 23. In appeals involving lands lying in more than one town, the taxpayer may challenge the town's value on the basis that it will cause the property to be taxed above fair market value

---

[15] The appraisal appeal process is a limited remedy because it involves only one town. We note that in the somewhat-similar situation where two towns claimed the land in question and separately taxed it, we authorized declaratory judgment relief to join both towns to determine which can tax the land. *See Poulin v. Town of Danville*, 128 Vt. 161, 260 A.2d 208 (1969).

overall, essentially what the taxpayer did in this case. The town must respond by showing not only how it appraised the property in the town but also that the overall valuation of the parcel across all towns does not exceed fair market value. The appraiser can make a determination on all the evidence presented. That process should be followed in this case on remand.

¶ 24. We believe it likely that the Legislature can and should create a less complex and more fair process for determining property valuation where multiple towns are involved.[16] It may also be possible for the Division of Property Valuation and Review to create a solution within its statutory mandate. We urge both to address this area of our property tax laws.[17]

*Reversed and remanded.*

---

[16] For example, taxpayer argues that the Town of Wells should be required to use the Town of Poultney's appraisal methodology as if the whole parcel were in Poultney. That may be a practical solution where, as here, the majority of the value is in Poultney. We do not believe we can impose this solution under the current statute.

The rule in many jurisdictions, as another example, is to allow one taxing jurisdiction to tax the property as if it lies in only that jurisdiction. See 72 Pa. Cons. Stat. Ann. § 5020-411 (when county boundary divides tract of land, county where "mansion house" is located can tax entire tract); W. Va. Code Ann. § 11-4-14 (where land is in more than one county, county "where the greater part thereof in value lies" may tax it all as if it was only in this county); see also *Adams v Floyd*, 83 S.E. 223 (Ga. 1914) (under Georgia law in effect, where land is in two counties, county with most of improvements may tax entire parcel).

[17] A similar recommendation was made by the Texas Court of Appeals in *Devon*, 178 S.W.3d at 883 n.5.