*Geddes v. Town of Bolton Board of Civil Authority*, 1006-11-16 Cncv (Teachout, J., Oct. 16, 2018)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Chittenden Unit** | **Docket #1006-11-16 Cncv** |

**JAMES GEDDES and ANNIE GEDDES**

    **v.**

**TOWN OF BOLTON BOARD OF CIVIL AUTHORITY**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This property tax appeal came before the Court for a final hearing on August 30, 2018. Appellants James and Annie Geddes were present and represented by Attorneys David M. Sunshine and James McC. Geddes. Attorney Robert E. Fletcher represented the Town of Bolton. A stipulation to the admission of Exhibit 11 and proposed findings of fact and legal memoranda were filed subsequently.

Appellants challenge the Town's April 1, 2016 assessment of their primary residence on 4.8 acres located at 3500 Bolton Valley Access Road in the Town of Bolton. The Town's Assessor and Board of Civil Authority both set the assessment at $728,000.

### Findings of Fact

For approximately four years prior to January of 2015, James and Annie Geddes (the Geddeses), who lived in Delaware, had spent considerable time looking for a house that would be a second home and their future primary residence and retirement home. Their goal was a home with a fireplace overlooking either water or mountains. They looked all the way up and down the east coast within a price range of $500,000-800,000. They liked to look at listings, and they inspected approximately 20-30 properties. At one point they had a contract on a property in Georgia for $699,000, but the seller was unable to follow through.

They visited Vermont to look at some properties, and saw a listing for the subject property for a sale by owner, who happened also to be the person who built the residence in 2004. They contacted him and arranged to see it on short notice, loved it, and negotiated a purchase price of $735,000. They purchased the property in January of 2015, and made no changes to it between purchase and the assessment date of April 1, 2016. At the time they purchased, it was assessed for $590,600.

The Town of Bolton had last done a reappraisal in 2011, and the Town updates its appraisals every five years. Accordingly, its Assessor Kermit Blaisdell conducted an update in

2016. He did not physically inspect the property. He had last visited it in 2006. In conducting Town-wide reappraisals, the Assessor develops a land value schedule based on sales, and then inputs the characteristics of each property into a computer program provided by the State to figure cost less depreciation that produces a value on a document called a "cost sheet."

The cost sheet for 2015 had a quality grade of construction of 4.75, which produced a house value of $471,000 as part of the overall value of $590,600. The Assessor changed the quality grade for 2016 from 4.75 to 5.75, which produced a house value of $632,000 and an overall value of $728,800. He then made a "miscellaneous adjustment" by subtracting $800, resulting in an assessment value of $728,000.

The 2015 selling price was $735,000 and the common level of appraisal for properties in Bolton, according to the State equalization study reflecting the relevant period year was 99.07%.[1] $735,000 x .9907 = $728,165. The Assessor was frank in admitting that he changed the quality grade to a level that would produce a value that reflected the market. He did the same thing to several other properties: he changed the quality grade so it would produce an assessment to what he thought was "fair and equitable" so that "everybody would be paying what they should be paying in relation to everyone else."

An appraiser hired by the Geddeses determined the fair market value of the property as of the valuation date to be $600,000, but he stated clearly in testimony that this appraisal failed to take into account certain facts or factors that he would apply if he were to redo the appraisal, but he has not redone the appraisal. He essentially acknowledged that his appraisal did not produce a reliable value. He testified credibly, however, that the quality grade of a constructed building becomes fixed at the time of construction, and the quality grade should not change from year to year, so that even though there may be fluctuations in the market value over time due to a variety of factors, the quality of construction remains the same and the grade should not be changed.

Ms. Geddes testified that her opinion was that the fair market value of the property was between $500,000 and 600,000. She based this largely on the fact that the log home was originally built from a kit in an economical manner, which she did not discover until after purchasing the property. The fact that an owner was able to build economically does not alter the value the property has in the market. She also testified that after purchase she discovered things such as aspects of kitchen design that she found not perfect. Neither of these opinions change the fact that the property sold at a negotiated price in an arms' length market sale. She did not have a satisfactory or credible explanation for the discrepancy between her opinion testimony and the actual sales price she and her husband agreed to pay after market exploration.

Both the Assessor and the Geddes's appraiser agreed that the sale to the Geddeses was an arms' length sale between a seller who had had the property on the market for a reasonable period of time and advertised on Picket Fence and buyers who had been looking in the market

---

[1]The January 2015 sale to the Geddeses was not included in the equalization study done by the State, nor was it identified as an excluded sale on the grounds that it was an outlier. It is unknown why it was excluded. The Assessor goes over all the sales that took place in the Town during the relevant period of the equalization study with the State District Director who prepares the study.

for a reasonable period of time, and there were no special relationships or factors affecting the price. No one testified otherwise.

The evidence is clear that the Geddeses were knowledgeable buyers who had explored the market extensively prior to purchasing this property, and that they negotiated a price with the seller that was lower than the price for which it had been previously listed for sale. There were no special circumstances surrounding the sale.

There was no credible evidence based on a sales approach analysis of sales of comparable properties between the purchase date and the assessment date. The court does not find that evidence of valuation based on the cost approach, which was evidence of how a mass appraisal methodology was or should be modified rather than an original application of the cost approach, was credible. Both parties agreed the income approach was not applicable. The only credible evidence was the evidence of the actual sale of the property, and the circumstances that show it was a fair market sale. No changes had been made to the property since the sale and there was no evidence of market changes between the sale date and the assessment date.

The court finds that the fair market value of the property as of April 1, 2016 was $735,000. This is based not on what the assessor or BCA did but on the evidence presented at trial. After applying the common level of appraisal percentage of 99.07%, a reasonable assessment value was $728,165, rounded to $728,000.


**Conclusions of Law**

"When a taxpayer grieves [a tax] assessment to the state appraiser, there is a presumption that the town's assessment is valid." *Vanderminden v. Town of Wells*, 2013 VT 49, ¶ 8, 75 A.3d 598. "This is a bursting bubble presumption; if the taxpayer presents any evidence that his property was appraised above fair market value, then the presumption disappears, and 'it is up to the town to introduce evidence that justifies its appraisal.'" *Id.* (quoting *Adams v. Town of West Haven*, 147 Vt. 618, 620 (1987)). The presumption bubble was burst by Ms. Geddes' testimony of her opinion of value.

It became the responsibility of the Court to make a *de novo* determination of the fair market value of the property. 32 V.S.A. § 4467. The fair market value of a property is defined as "the price which the property will bring in the market when offered for sale and purchased by another, taking into consideration all the elements of the availability of the property, its use both potential and prospective, any functional deficiencies, and all other elements such as age and condition which combine to give property a market value." 32 V.S.A. § 3481(1)(A). The goal is to ensure that property owners pay their fair share of the tax burden based on the potential of their property as determined by fair market value. *Zurn v. City of St. Albans*, 2009 VT 85, ¶ 9.

To determine a valuation of the property for purposes of 32 V.S.A. § 4467, the court must first determine the fair market value for the property and then equalize that value. 32 V.S.A. § 4601; *Dewey v. Town of Waitsfield,* 2008 VT 41 at ¶2.

3

The "most persuasive method of appraising residential property in Vermont is to establish fair market value through bona fide sale transactions."  *Sondergeld v. Town of Hubbardton,*  150 Vt. 565 (1988) at 566, citing *Royal Parke Corp. v. Town of Essex,* 145 Vt. 376 (1985).

As described above in the findings of fact, the court finds the fair market value of the property on April 1, 2016 was $735,000 based on the credible evidence presented at trial.  There was no dispute that the common level of appraisal for that tax year was 99.07%.

## ORDER

The fair market value of the property as of April 1, 2016 was $735,000.  The listed value for purposes of property tax assessment was $728,000.

Dated this _____ day of October, 2018.


_____
Hon. Mary Miles Teachout
Superior Court Judge